STATE *ex rel.* J. W. SHAMBLIN

*v.*

HON. PIERRE E. DOSTERT, *Judge, etc.*

(No. 14468)

Decided June 12, 1979.

Rehearing Denied July 10, 1979.

*J. M. Tully* for relator.

*Radosh & Askin and Jerome Radosh* for respondent.

NEELY, JUSTICE:

In this original proceeding the petitioner, J. W. Shamblin, seeks to prohibit the respondent judge of the Circuit Court of Berkeley County from interfering with service of the lawful process of the Circuit Court of Nicholas County. We can conceive of no power by which one circuit court may interfere with the process or orders of another circuit court regardless of how erroneous or imperfect those orders or process may be; therefore, we award the writ.

The petitioner, J. W. Shamblin, obtained a valid money judgment in the Circuit Court of Nicholas County (hereinafter the Nicholas Court) against Tri-County Contracting Company, a corporation located in Berkeley County. A writ of execution on this judgment was issued by the Clerk of the Nicholas Court and sent to the Sheriff of Berkeley County who, after service, filed the return stating "No property found." To aid the writ of execution, a summons to answer interrogatories before a commissioner in Nicholas County was served upon M. V. McFillan, president of Tri-County Contracting Company, in Berkeley County but Mr. McFillan did not appear. The Commissioner in Nicholas County then directed an attachment for the body of Mr. McFillan to the Sheriff of Berkeley County who refused to execute the Nicholas County attachment and sought the aid of the Circuit Court of Berkeley County (hereinafter the Berkeley Court). The respondent judge of the Berkeley Court by letter to the Judge of the Nicholas Court offered to appoint a commissioner in Berkeley County to propound the interrogatories to Mr. McFillan. The Nicholas Court, apparently refusing the offer, issued an order on 26 September 1978 to the Sheriff of Berkeley County to show cause why he should not be held in contempt for refusal to execute the process of the Nicholas Court. A further order was entered on 5 January 1979 requiring the Sheriff of Berkeley County to appear on 13 February 1979 to show cause on the contempt issue; however, on 22 January 1979 the respondent Judge of the Berkeley Court

entered an order enjoining the Sheriff of Berkeley County both from executing the body attachment and appearing in Nicholas County to answer the contempt charge. The petitioner contends that the respondent Berkeley Court's action was without jurisdiction. We agree.

## I

The controversy in this case centers around *W. Va. Code*, 38-5-1 [1923] and *W. Va. Code*, 38-5-2 [1923]. *Code*, 38-5-1 provides:

> To ascertain the estate on which a writ of fieri facias issued by any court of record, or an execution issued by a justice of the peace, is a lien, and to ascertain any real estate in or out of this State to which a debtor named in such fieri facias or execution is entitled, upon application of the execution creditor, the clerk of the court from which the execution issued ... shall issue a summons against the execution debtor, or any officer of a corporation execution debtor having an office in this State ... requiring the execution debtor to appear before a commissioner in chancery of the county from which the summons issued, or, if the execution creditor so directs, before a commissioner in chancery of the county where such execution debtor resides, such commissioner and his county to be named in the summons ... such appearance to be made at a time and place to be designated therein, to answer upon oath such questions as shall be propounded at such time and place by counsel for the execution creditor, or by the commissioner.

*Code*, 38-5-2 provides:

> The summons mentioned in the preceding section [§ 38-5-1] shall be directed to an officer of the county in which the commissioner before whom it is returnable resides, and shall be served in such county ...

Respondent contends that these two sections read together mandate that interrogatories in aid of execution be answered by the execution debtor in the county of his

residence; however, *W. Va. Code*, 38-5-1 [1923] specifically provides for the debtor to be summoned before the court which issued the original execution. There is some confusion generated by the apparent inconsistency between *W. Va. Code*, 38-5-1 [1923] and *W. Va. Code*, 38-5-2 [1923]; while *code*, 38-5-1 provides for a summons to appear before a commissioner in the county from which the execution was issued *Code*, 38-5-2 seems to limit service of that summons to an officer of *that* county. A problem arises when, as in the case before us, the execution creditor desires to interrogate his execution debtor in the county from which the execution issued (his right under *Code*, 38-5-1) but the execution debtor resides in another county and is, therefore, seemingly unservable by virtue of *Code*, 38-5-2.

The conflict must be resolved in favor of the execution creditor since his right to satisfaction of a judgment is protected by *Code*, 38-5-1 et seq. If we were to interpret *Code*, 38-5-2 as permitting service *only* in the county where the interrogation is to take place, we would in effect nullify the execution creditor's choice under *Code*, 38-5-1 to have the interrogation either in the judgment county *or* the execution debtor's county of residence—a result clearly not envisaged by the Legislature. *W. Va. Code*, 38-5-2 [1923] must, therefore, be interpreted as providing only the initial procedural guidelines for service of the summons: the summons shall issue from the county in which the execution was issued; shall be directed to an officer of the county in which the commissioner before whom it is returnable resides for service; and, shall be served in that county; however, if such service does not reach the execution debtor, the summons shall be forwarded to another county (usually the debtor's county of residence) where successful service can be anticipated, and the officers of that county shall exert their best efforts to accomplish successful service.

## II

Respondent contends that even if *W. Va. Code*, 38-5-1 [1923] et seq. permits interrogation in a county other

than the execution debtor's county of residence, his action was proper because the process directed to the Sheriff of Berkeley County was faulty because it did not clearly carry the signature of the Circuit Court of Nicholas County or its clerk. His contention is without merit; the Circuit Court of Berkeley County had no jurisdiction to interfere with the Circuit Court of Nicholas County even if the latter's actions were erroneous. *W. Va. Const.* art. 8, § 1 provides that "[t]he judicial power of the State shall be vested solely in a supreme court of appeals and in the circuit courts, and in such intermediate appellate courts and magistrate courts as shall be hereafter established by the legislature, . . ." *W. Va. Const.*, art. 8 § 6 provides that "[c]ircuit courts shall have original and general jurisdiction of all civil cases" and *W. Va. Const.*, art. 8 § 3 provides that the Supreme Court of Appeals "shall have appellate jurisdiction in civil cases." These three sections provide an orderly structure in which errors of a circuit court are corrected by this Court and not by fellow circuit courts. If one circuit court could interfere with the orders of another circuit court only chaos would result—a litigant could search all thirty-one circuits for an opinion favorable to him. While the Sheriff of Berkeley County was wrong in seeking the aid of the Circuit Court of Berkely County, he was not without a remedy if the process presented to him for service were faulty. He could have appeared in the Circuit Court of Nicholas County and attempted to show cause why he should not be held in contempt; could have appealed any adverse ruling; or, he could have sought a writ of prohibition in this Court.

For the reasons stated above, the writ of prohibition prayed for is awarded.

*Writ awarded.*