406 S.E.2d 425

**Kathy Jo SCHOFIELD**

v.

**WEST VIRGINIA DEPARTMENT OF CORRECTIONS.**

No. 19708.

Supreme Court of Appeals of West Virginia.

March 15, 1991.

Dissenting Opinion of Justice Workman July 29, 1991.

Michele L. Rusen, Asst. Pros. Atty., Robert Waters, Asst. Pros. Atty., Parkersburg, for West Virginia Dept. of Corrections.

Rom Rodd, Milton Zelermyer, Morgantown, for Kathy Jo Schofield.

NEELY, Justice:

Kathy Jo Schofield was convicted of first-degree murder without a recommendation of mercy by a Wood County jury in December 1982. Her conviction was affirmed by this Court in *State v. Schofield*, 175 W.Va. 99, 331 S.E.2d 829 (1985). In 1987 Ms. Schofield petitioned the Circuit Court of Monongalia County for post-conviction habeas corpus relief under *W.Va. Code*, 53–4A–1 [1967] *et seq.* Ms. Schofield's amended habeas corpus petition alleged that her trial counsel were ineffective in three areas: (1) they failed to deal adequately with the issue of mercy by offering evidence, instructions and argument; (2) they failed to offer evidence before the jury on the issue of whether her statements were voluntary; and (3) they failed to represent her adequately with respect to a proposed plea agreement. The petitioner asked that her conviction be vacated and that she be permitted to plead under the proposed plea agreement, or in the alternative, that she be granted a new trial.

The Circuit Court of Monongalia County conducted a hearing and reviewed the depositions of defendant's trial counsel. Based on the evidence presented, the circuit court found trial counsel to be ineffective in a "limited but significant area," and modified the final judgment of the Circuit Court of Wood County by adding a recommendation of mercy. No new trial was ordered, nor was the matter remanded to the Circuit Court of Wood County. The State of West Virginia now appeals, arguing that the jury's verdict of guilty of first-degree murder with no recommendation of mercy should be reinstated. We find that the circuit court's findings of fact were not contrary to the weight of the evidence; however, we reverse the circuit court's award of a recommendation of mercy and remand the case to Wood County for a new trial.

I

Kathy Jo Schofield was arrested by the Parkersburg Police Department on 4 May 1982 and charged with the murder of James Preston Gill. Shortly thereafter, David Finnerin, a Parkersburg lawyer, was appointed to represent Ms. Schofield. On 20 September 1982, William Powell was appointed as co-counsel for Ms. Schofield.

The evidence proved that Ms. Schofield had entered the apartment of James Gill

and shot him in the back. In addition to the physical evidence connecting the defendant to the murder weapon at the crime scene, Ms. Schofield admitted at trial that she had shot Mr. Gill, but asserted that it was done in self-defense. This statement was contradicted, however, by her earlier statements to the police that Mr. Gill had been shot by a nonexistent person named "Buddy" and that she had shot him "to see what it was like to kill someone." *State v. Schofield, supra,* 175 W.Va. at 100, 331 S.E.2d at 833, 834. Ms. Schofield, although of limited intelligence, was found by three different mental health professionals to be competent to stand trial and criminally responsible.

Ms. Schofield appealed her conviction to this Court. In that appeal, Ms. Schofield's appellate counsel challenged the validity of Ms. Schofield's arrest, the failure to conduct a competency hearing, the refusal to give an insanity instruction, and the giving of an instruction which did not explain to the jury that without a recommendation of mercy, Ms. Schofield would never be eligible for parole. Each of these alleged errors was discussed and rejected by this Court. *State v. Schofield, supra.*

In connection with the habeas corpus petition, both original trial counsel were deposed and later testified at a hearing. Mr. Finnerin testified that he had practiced law since 1971, and that in 1982 he had been on the list of local lawyers who voluntarily accepted appointments to represent indigent criminal defendants for approximately ten years. Mr. Finnerin stated that the defendant was "probably the most difficult client" he'd ever had. As Mr. Finnerin stated:

> The key problem was that she did not one time while I was representing her ever consistently tell me the same thing that she had earlier told me. She told me so many different things, and so many difference [sic] versions of what had happened, and so many different versions of her life history that each one was different. She was never able to consistently tell me anything. And that presented a great problem in trying to prepare for a trial because one day she would say one thing, the next day she

would say another, the next day she would not want to talk with me, she'd get angry with me, the next day I'd be her friend. She was just very difficult.

Mr. Finnerin testified that he conducted an investigation into the circumstances surrounding the shooting, as was his usual practice, rather than hiring a private investigator. Mr. Finnerin stated that he talked with local people about the character of the victim, but found no confirmation with regard to Ms. Schofield's claim that James Gill was her pimp. Mr. Finnerin visited the scene of the crime, pursued the "Buddy" story, looked for the mythical Buddy whom the defendant stated had helped her rob Mr. Gill and then had shot him, and then monitored the police's inquiry into that possibility. In the end, however, Mr. Finnerin was never able to corroborate any aspect of Ms. Schofield's story.

During the course of Mr. Finnerin's preparation for trial, Mr. Finnerin obtained a plea agreement from the State under which Ms. Schofield would plead guilty to second-degree murder. Mr. Finnerin met with the defendant and her parents several times to explain the matter and to prepare for the plea. The plea agreement fell apart, however, when the judge inquired if Ms. Schofield was aware of the penalties for the lesser included offenses of voluntary manslaughter and involuntary manslaughter. After adjourning temporarily so that Mr. Finnerin could explain those offenses to her, the defendant became angry with her counsel and ultimately refused to enter a plea to second-degree murder despite Mr. Finnerin's advice to her that it was "the best that [she] could ever hope to get." As Mr. Finnerin explained:

> I took her out in the hallway—we were in the old courthouse then—and sat down with her. I went over the elements of each of these other offenses and I explained them to her. She wanted one of them. It was like a kid in a candy store. Well, I'm not going to plead to this. You tell the prosecutor I want this one. She wanted the voluntary or involuntary, whatever the least penalty would have

been. She was very petulant about it and childish.

At this point Mr. Finnerin asked that additional counsel be appointed to help him deal with the defendant. The Court then appointed Mr. Powell, who had graduated from Duke Law School and practiced law since 1975. As Mr. Finnerin stated, the trial court carefully considered whom he would appoint to assist with the representation of Ms. Schofield and ultimately chose Mr. Powell because the Court thought that Mr. Powell had successfully represented difficult juvenile clients in the past.

After becoming involved in the case, Mr. Powell advised the defendant to accept the second-degree murder plea offer, and Mr. Powell confirmed that the defendant would not plead because she insisted that she wanted the one to five year sentence and couldn't understand why she couldn't have it. Mr. Powell continued to urge her to plead to second-degree murder and repeatedly told her that the prosecutor would not accept a plea to voluntary manslaughter and that, in his opinion, she would not be able to get such a verdict from the jury.

Mr. Powell also testified concerning the defendant's inability to tell a consistent version of the events of the night of the shooting. It was his recollection that Ms. Schofield told four or five different stories about the shooting and that her story would change in response to the ongoing colloquy of second-degree murder versus manslaughter. In other words, Kathy Schofield would tell one story, and after counsel would point out the reasons that such a story would not get her a manslaughter conviction, she would concoct another story.

Mr. Finnerin and Mr. Powell were also questioned also concerning their approach to dealing with the issue of mercy during closing argument. Mr. Finnerin stated that it was a judgment that he made during the course of the trial, by looking at the evidence, and then making the difficult decision about whether to mention mercy during closing. Mr. Powell stated that he and Mr. Finnerin had decided that they did not want to appear to be in the posture of admitting that their client was guilty of first-degree murder, and that mercy was the only real issue to be considered. For that reason, a strategic decision was made to argue the case the way it was argued. Further, because the prosecutor in his closing argument had argued that the only issue before the jury was mercy, defendant's trial counsel did not want to appear to agree with him and give further credence to that notion.

Given those constraints, trial counsel did their best to arouse some shred of sympathy for the defendant. This was made extremely difficult by the overwhelming evidence against Ms. Schofield, and by her own extremely damaging testimony before the jury. In addition, defendant apparently did not want her counsel to argue her diminished capacity or to make a plea for mercy.

## II

The Circuit Court of Monongalia County modified the Circuit Court of Wood County's order by adding a recommendation of mercy and, in awarding this relief, reasoned as follows:

With respect solely to the question of effectiveness of representation addressing the issue of the potential recommendation of mercy: the lack of witnesses, the lack of argument, and the lack of a complete and explicit mercy instruction, taken together, clearly and convincingly combined to create a condition that caused the defendant not to receive effective assistance relative to the question of mercy in this case.

Therefore, this Court is of the opinion that Kathy Schofield did not receive a constitutionally fair trial on the question of the degree and potential duration of her sentence. While she was represented by highly able counsel who in all other respects did a credible job on her case, apparently because of problems associated with her communication with her counsel, and her last-minute decision to take the stand, the mercy issue never

received the attention at trial it constitutionally should have.

The court then went on to determine that this limited area of ineffectiveness would not have affected the jury's determination of guilt, and that this case called for "unique relief." The court said:

The constitutional defects in Schofield's trial, which this Court has concluded warrant granting of appropriate habeas relief, likely did not affect the jury's determination of guilt. This Court believes, however, that the constitutional deficiencies contributed to the jury's decision not to recommend mercy. There is a reasonable probability (i.e., a strong enough probability that the outcome would have been different) that had available evidence, argument and a complete instruction been presented in support of mitigation or mercy, the jury would have recommended mercy.

### III

■ In the oft quoted Syllabus Point 19 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) we said:

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

The *Thomas* standard conforms to the performance and prejudice test of ineffective assistance of counsel applied by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and applies when effective assistance of counsel is challenged in a habeas corpus proceeding. *State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 342 S.E.2d 127 (1986).

In applying the *Thomas* standard here we should note the "reasonably knowledgeable of criminal law" language of *Thomas*, Syllabus Point 19, and then look to our case of *State ex rel. Leach v. Hamilton*, W.Va., 280 S.E.2d 62 (1980) where we said:

We cannot envision a murder defense, however, that would not require introduction of all possible evidence toward reduction of a jury's view of the severity of defendant's acts. Even when alibi is a defense, good character evidence would be appropriate.

And so we cannot conceive of any fact that defendant could introduce to convince a jury that he deserves mercy at a separate sentencing stage that should not be introduced by him at the main trial, and Leach presents us with none.

■ *Leach v. Hamilton* implies that, all things being equal, a lawyer should make sure that any available mitigation evidence is presented to the jury in a murder case. However, counsel at Ms. Schofield's original trial were also up against the time-honored principle governing lawyer conduct now codified in Rule 1.2(a), *Rules of Professional Conduct* which provides as follows:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

Obviously, at her trial for murder, Ms. Schofield directed her lawyers to attempt to get her either an acquittal or a conviction for manslaughter. Because her lawyers understood that this assignment was virtually impossible to perform, and because there was material about Ms. Schofield's limited mental ability, her history of social and emotional problems, and her

family background, that could have been introduced in evidence without inviting overwhelming counter-evidence on the part of the State, we conclude that the circuit court did not abuse his discretion in deciding that counsel were technically ineffective.

## IV

Finally, we must decide whether the circuit court was within his statutory authority when he awarded the relief of modifying the jury's verdict. The powers of a circuit court in post-conviction habeas corpus proceedings are set out in *W. Va. Code*, 53–4A–7(c) [1967] which provides as follows:

> When the court determines to deny or grant relief, as the case may be, the court shall enter an appropriate order with respect to the conviction or sentence in the former criminal proceedings and such supplementary matters as are deemed necessary and proper to the findings in the case, including, but not limited to, remand, the vacating or setting aside of the plea, conviction and sentence, rearraignment, retrial, custody, bail, discharge, correction of sentence and resentencing, or other matters which may be necessary and proper. In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided. Any order entered in accordance with the provisions of this section shall constitute a final judgment, and, unless reversed, shall be conclusive.

■ Although the provision quoted above refers to "such supplementary matters as are deemed necessary and proper," we do not believe that the legislature intended in that catchall phrase to allow a circuit court hearing a post-conviction habeas corpus matter to substitute his judgment for the judgment of the judge and jury who originally heard the case. Although *W. Va. Code*, 53–4A–7(c) [1967] re-

fers to "correction of sentence and resentencing," the legislature meant by that phrase to allow correction of such things as clerical errors like the trial court's failure to award time served in jail pending trial. We have specifically held in *State ex rel. Shamblin v. Dostert*, 163 W.Va. 361, 255 S.E.2d 911 (1979), that one circuit court of this State cannot modify the judgment of another circuit court. Syllabus Point 2 of *Shamblin* said:

> W.Va. [C]onst., art. 8 § 1, W.Va. Const., art. 8 § 3, and W.Va. Const., art. 8 § 6 when read together provide an orderly and exclusive system by which errors of circuit courts may be corrected only by the West Virginia Supreme Court of Appeals and not by other circuit courts. One circuit court may not directly or indirectly interfere with the orders of another circuit court unless specifically provided by statute or civil rule regardless of how erroneous such orders may be.

■ In Syllabus Point 1, *Nicholson v. Boles*, 148 W.Va. 229, 134 S.E.2d 576 (1964), we said:

> A habeas corpus proceeding is not a substitute for a writ of error or other appellate process, and error in a final judgment in a criminal case, which renders such judgment voidable merely but not void, can not be considered or corrected in such proceeding; but if a sentence of imprisonment under which a person is confined is void, in whole or in part, it may be reached and controlled in a habeas corpus proceeding.

■ Consequently, we believe that the Circuit Court of Monongalia County exceeded his legitimate powers in modifying the appellee's conviction from one for first-degree murder without a recommendation of mercy to first-degree murder with a recommendation of mercy. Having found ineffective assistance of counsel at trial, the proper remedy was to vacate the conviction and to retry the defendant on the original indictment.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of

Monongalia County is reversed and the case is remanded with directions to vacate the appellee's conviction with leave to the State to retry the appellee on the original indictment.

Reversed in part, affirmed in part, and remanded with directions.

WORKMAN, J., concurs in part and dissents in part and reserves the right to file a concurring and dissenting opinion.

WORKMAN, Justice, dissenting:

## INEFFECTIVE ASSISTANCE OF COUNSEL

The majority has placed defense lawyers in a catch–22—a situation where they're ineffective if they do, and they're ineffective if they don't.

The majority finds that the two defense counsel were ineffective in their approach to the issue of mercy by virtue of their failure to present any substantial evidence or argument on the issue of mercy. But it is also quite easy to imagine the majority finding ineffective assistance of counsel on the same issue had defense counsel *failed* to follow their client's wishes.

It is a further irony that the writer of the majority opinion seems not to agree with his own conclusion, both in the commentary relating to the lawyers' performance and in the discussion of the law.

First, the bulk of the law cited by the majority supports the position of defense counsel that their decision not to emphasize mercy in their defense was made (1) for strategical reasons and (2) at the direction of their client.

Prior to trial, defense counsel negotiated a favorable plea agreement for this defendant, wherein she could have pled guilty to second degree murder. This in and of itself demonstrates that defense counsel were effective, considering that this defendant shot the victim in the back for no discernible good reason, changed her story numerous times (giving police one statement in which she said she did it "to see what it was like to kill someone"), and

given the fact that she was, by all accounts, a very difficult client and a terrible witness whose testimony was extremely damaging to her own case. The defendant was adamant, however, that she would accept nothing less than manslaughter, both in plea negotiations and trial strategy.

As recognized by the majority, our seminal case on the issue of ineffective assistance of counsel is *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). Although the majority cites syllabus point 19 of *Thomas* for the general proposition that courts should "measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law ...," they fail to include the equally important principle announced in syllabus point 21 of *Thomas* that: "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

Further, Rule 1.2(a) of the *Rules of Professional Conduct* cited by the majority provides:

*A lawyer shall abide by a client's decision concerning the objectives of representation,* subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify. (emphasis added)

This Court previously has addressed the issue of following the directives of the client, as required by Rule 1.2(a) of the Rules of Professional Conduct, in the context of an ineffective assistance of counsel issue.

We held in the syllabus of *Asbury v. Mohn*, 162 W.Va. 662, 256 S.E.2d 547 (1979), that "[c]ounsel is not ineffective when, following directions from his client, he does not appeal the client's criminal conviction, where the client's choice involves no legal judgment that the lawyer should overrule." In *Asbury*, the client affirmatively opposed the prosecution of an appeal of a grand larceny conviction, based upon the client's belief that an appeal would jeopardize his chances for parole. *Id.* 162 W.Va. at 666, 256 S.E.2d at 549. In holding that counsel's assistance was not ineffective, we explained that "[i]t is too much to ask of counsel that in order that he be considered effective he must act directly contrary to his client's directions in a matter where the client's choice involves no legal judgment that the lawyer should overrule." *Id.*

We elaborated upon the *Asbury* reasoning in *State v. Glover*, 183 W.Va. 431, 396 S.E.2d 198 (1990). In *Glover*, we reiterated the distinction between clients' directives involving no legal judgment and clients' directives involving legal judgment. Where the directive of the client involves no legal judgment that the lawyer should overrule, as in *Asbury*, following the client's directive will not be considered ineffective. In *Glover*, however, we encountered a situation wherein the client's directive involved a legal judgment, specifically whether to file a timely notice of alibi. Despite the client's instruction to the attorney to delay in interviewing potential alibi witnesses, the failure of the attorney to file a timely notice of alibi "cannot be excused on the ground that he was relying on the defendant's instructions." *Id.* 183 W.Va. at 435, 396 S.E.2d at 202. "Clearly, the interviewing of the alibi witnesses and the filing of the notice of alibi in this case were matters involving 'legal judgment.' " *Id.*

Here the most critical decision that was made by the defendant, and the one most damaging to her interests, would appear to be the decision not to accept the plea agreement proposal. The decision to enter a plea of guilt, however, is that of a criminal defendant alone. One of the specific matters addressed by Rule 1.2(a) of the Rules of Professional Conduct is that "[i]n a crim-inal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered...."

The majority tells us that at the habeas hearing defense counsel, Mr. Finnerin and Mr. Powell,

> were also questioned also [sic] concerning their approach to dealing with the issue of mercy during closing argument. Mr. Finnerin stated that it was a judgment that he made during the course of the trial, by looking at the evidence, and then making the difficult decision about whether to mention mercy during closing. Mr. Powell stated that he and Mr. Finnerin had decided that they did not want to appear to be in the posture of admitting that their client was guilty of first-degree murder, and that mercy was the only real issue to be considered. For that reason, a strategic decision was made to argue the case the way it was argued. Further, because the prosecutor in his closing argument had argued that the only issue before the jury was mercy, defendant's trial counsel did not want to appear to agree with him and give further credence to that notion.

These lawyers were faced with a difficult client and a difficult decision. They obviously considered the client's adamant directives as well as the case in its entirety in arriving at the decision that their client's best hope for a favorable result would be a de-emphasis on a mercy plea. This was certainly a decision involving "strategy, tactics and arguable courses of action ..." which should be deemed effectively assistive of the client's interests "unless no reasonably qualified defense attorney" would have proceeded with the course of action chosen by these attorneys. *Thomas*, 157 W.Va. at 663, 203 S.E.2d at 461. It is clear from the record and all the circumstances of this case that these lawyers rendered effective assistance of counsel.

## MERCY BIFURCATION

This issue points up the need for this Court to consider once again the possibility

of bifurcating the issue of mercy in first degree murder cases.

The writer of the majority opinion penned an excellent dissent in *State ex rel. Rasnake v. Narick*, 159 W.Va. 542, 227 S.E.2d 203 (1976) and reiterated it as the basis for his dissent in *State ex rel. Leach v. Hamilton*, W.Va., 280 S.E.2d 62 (1980).

As a matter of fact, this dissenter can't say it any better, so herewith Justice Neely's dissent is repeated in pertinent part:

> Under both the West Virginia rape and first degree murder statutes, W.Va.Code, § 62–3–15 [1965] and § 61–2–15 [1965] the jury determines guilt in the first instance and simultaneously determines whether life imprisonment or a lesser sentence will be imposed. While it is impossible to dictate standards to guide jury discretion in determining the question of whether mercy should be accorded a defendant, it does not follow that evidence with regard to the circumstances surrounding the perpetration of the crime, the motives of the accused, and the provocation which prompted the act are all irrelevant.
>
> While the civil rules provide that a civil litigant may plead inconsistent defenses it is unreasonable to believe that a simultaneous assertion of innocence and mitigation is workable in a criminal jury trial. It is impossible for a criminal defendant to maintain his innocence, introduce evidence in support of that proposition, and simultaneously introduce all of the evidence which would tend to mitigate the punishment. Since evidence of mitigation can only be taken as a confession of guilt, the criminal defendant will frequently be forced, as a matter of strategy, to curtail or eliminate his presentation of evidence on mitigating circumstances. Any such compelled choice undeniably burdens the criminal defendant's right to be heard on the issues of punishment and sentence.
>
> On the other hand, a criminal defendant who chooses, from necessity, to introduce evidence on mitigation suffers the loss of his right to have the State prove its case beyond a reasonable doubt while he stands mute and offers no evidence on the issue of innocence. This is the time-tested way of securing a jury acquittal and as the right is constitutionally guaranteed to a defendant, any procedure which circumscribes its use is inherently unconstitutional.
>
> Under our current unitary trial procedure it is necessary for a defendant to set forth all the mitigating circumstances which would bear upon a recommendation of mercy before the question of guilt is determined. There is no reason why a jury cannot hear evidence on mitigation after it has returned a verdict, as such a procedure imposes no unreasonable burden on the court which would outweigh the advantages to be obtained in terms of rational procedure.

*Rasnake*, 159 W.Va. at 553, 227 S.E.2d at 207–09 (footnotes and citations omitted).

Furthermore, a bifurcated hearing on the issue of mercy would not only permit the defendant a far broader latitude in presenting to the jury full information concerning the defendant's life and circumstances and any mitigating evidence in an effort to obtain the balm of mercy. It would also permit the state an opportunity to present any information at its disposal as to the propriety (or lack thereof) of a grant of mercy. If a particular defendant has an egregious criminal history or a marked propensity for violence, for example, that would also be an appropriate factor for the jury to consider. The determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation of all relevant circumstances without regard to strategy during trial on the merits.

\*    \*    \*    \*    \*    \*

I concur with the majority on the other tenets of its opinion. Obviously a circuit court has no authority to modify the jury finding of no mercy to award mercy as part of post-conviction habeas corpus relief on the basis of ineffective assistance of counsel. The fact that the circuit court did so fairly well indicates that the court knew

defense counsel were not ineffective, but that the court felt sorry for this defendant and wanted to cut her a break. Perhaps the majority was similarly motivated, but it was also similarly wrong. Under the law of West Virginia, it is the jury's prerogative—not the circuit court's, nor the Supreme Court's—to decide whether mercy is appropriate.