## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Terry Buxton,**
**Petitioner Below, Petitioner**

**FILED**

May 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0648** (Wayne County 98-C-096)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Terry Buxton, by counsel Crystal L. Walden, appeals the order of the Circuit Court of Wayne County, entered on June 3, 2014, denying his petition for writ of habeas corpus. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

Petitioner was indicted in 1992 for the first degree murder of Katherina Buxton, his ex-wife, and the malicious wounding of Shawn Ellis, the man with whom she was having a relationship at the time. Following a jury trial in April of 1993, petitioner was convicted of both charges; the jury did not recommend mercy on the first degree murder conviction.[1] Thereafter, the circuit court sentenced petitioner to prison without the possibility of parole.

The evidence at trial revealed that petitioner and Ms. Buxton married in 1976, divorced the following year, but reunited and remained together until Ms. Buxton's murder. The testimony also revealed that, subsequent to petitioner and Ms. Buxton reuniting, Ms. Buxton and Mr. Ellis became involved in a romantic relationship. The testimony revealed that on the evening prior to the murder, Ms. Buxton telephoned Mr. Ellis, but petitioner took the phone from her and threatened Mr. Ellis, saying he was a "dead man" and that petitioner "was coming for him." The

---

[1] Petitioner's trial counsel was Laurence J. Lewis. Mr. Lewis testified at the omnibus hearing in this matter.

1

following morning, Ms. Buxton went to Mr. Ellis's residence. Petitioner arrived at Mr. Ellis's residence about an hour later, while Ms. Buxton and Mr. Ellis were sitting on the porch. Petitioner opened fire as he approached the residence. Mr. Ellis was hit by one of the bullets fired by petitioner and ran to a neighbor's house to call the police.

At trial, the State called Mark Pennington, one of Mr. Ellis' neighbors, to testify. This neighbor testified that he heard the gunfire and saw Ms. Buxton and petitioner exit the rear of the residence. The neighbor then saw petitioner put Ms. Buxton in a headlock with a gun pointed at her forehead. As the neighbor approached petitioner in an effort to de-escalate the situation, petitioner shot Ms. Buxton in the head. At that point, petitioner turned the gun on himself and pulled the trigger, but the gun did not fire as all of the bullets had been expended. Petitioner then left the scene.

Petitioner testified on his own behalf at trial. He told the jury that he grew up in an abusive home, that his father and stepmother were alcoholics, and that his stepmother sexually abused him when he was thirteen years old. He claimed that he had been threatened by Mr. Ellis in the past, but denied ever threatening him. He testified that as he approached the residence and saw Mr. Ellis and Ms. Buxton on the porch, he heard Ms. Buxton tell Mr. Ellis to get his shotgun. Petitioner conceded that he opened fire when Mr. Ellis got up, but claimed that he did so out of fear that Mr. Ellis would get his shotgun. Petitioner also testified that as Ms. Buxton was trying to hold him back, they fell to the ground. Petitioner had no recollection of shooting Ms. Buxton in the head, but admitted that he tried unsuccessfully to shoot himself and that he left the scene in order to get more bullets. Petitioner testified that he surrendered to police once he learned that Ms. Buxton had survived at the scene.[2]

The jury deliberated for less than an hour before finding petitioner guilty of both charges in the indictment. The circuit court sentenced petitioner to life in prison without mercy on the murder conviction and two to ten years in prison on the malicious wounding conviction, with the sentences to run consecutively.

Petitioner filed his amended petition seeking habeas relief on May 24, 2013.[3] The circuit court held an omnibus evidentiary hearing on December 12, 2013. Petitioner presented evidence and argued that his trial counsel was ineffective because he failed to present evidence of mitigation at trial. Trial counsel defended his representation of petitioner and testified, most notably, that petitioner sought a sentence for second degree murder; that petitioner had no desire to mount a defense for first degree murder, more particularly, on the issue of mercy; and that petitioner refused to allow him to offer other forms of mitigating evidence, such as petitioner's

---

[2] Ms. Buxton did not die at the scene. She was taken to the hospital, required surgery, but did not survive. The medical examiner testified that Ms. Buxton died from a "gunshot wound of the head."

[3] Petitioner's direct appeal was refused by this Court on May 21, 1997. Petitioner originally filed his habeas petition pro se in 1998. Counsel was appointed in 1999, but that counsel was relieved by order entered in May of 2007. The Kanawha County Public Defender's Office was thereafter appointed to represent petitioner.

own psychiatric evaluation. The habeas court ruled that, because petitioner did not admit the crime to the authorities, there was not such an insurmountable amount of incriminating evidence that would make the proposition of obtaining a second-degree murder conviction "virtually impossible." Therefore, trial counsel's obligation to present the mitigating evidence over petitioner's objection was not triggered. *See Schofield v. W.Va. Dep't of Corrections,* 185 W.Va. 199, 203-04, 406 S.E.2d 425, 429-30 (1991) (holding that a murder defendant's trial counsel was "technically ineffective" by failing to produce mitigating evidence when the relief sought by the defendant was "virtually impossible to perform."). The habeas court concluded that trial counsel's performance was not objectively deficient.

In his habeas petition, petitioner also contended that he was denied his right to remain silent because, during direct examination of the arresting officer and during cross-examination of petitioner, the State referenced petitioner's refusal to give a statement to the police. During the State's direct examination of the arresting officer, he testified as follows regarding establishing the chain of custody for the murder weapon:

> When we arrived at Wayne Detachment, I put all the evidence that I had there and brought them in and put them in my desk drawer. At the same time we brought [petitioner] in. I advised [petitioner] of his constitutional rights. He preferred not to give a statement until he spoke to an attorney.

Petitioner's trial counsel objected. The court sustained the objection and instructed the jury to disregard the officer's statement.

Subsequently, during cross-examination of petitioner, the following exchange occurred between the prosecuting attorney and petitioner:

> Q. [Prosecutor]: You stated to the jurors a while ago that you just wanted them to know your side of the story. The Story that you testified to, that you have in your notes, the way you answered your lawyer, have you ever told that story to anyone else other than your lawyer?
>
> A. [Petitioner]: No.
>
> Q. [Prosecutor]: If you wanted everybody to know your side why didn't you tell it to the police officer?
>
> [Defense counsel]: Objection, Your Honor.
>
> THE COURT: Will be sustained.
>
> [Prosecutor]: That's all the questions I have.

The habeas court ruled that there was no error in the State's isolated references to petitioner's decision to not give a statement to the police given that the jury was instructed to disregard the officer's testimony and petitioner never answered the question. The court went on to conclude that any error was harmless given the neighbor's eyewitness testimony to petitioner

shooting Ms. Buxton in the head. On June 3, 2014, the circuit court entered its "Opinion Order Denying the Writ of Habeas Corpus," and petitioner now appeals to this Court.

**Discussion**

Our standard of review for appeals of a circuit court's denial of a habeas petition is set forth as follows:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner raises two assignments of error. First, he argues that the circuit court erred by finding that petitioner received effective assistance of counsel where his trial counsel admitted that he did not investigate or present important and available mitigation evidence regarding petitioner's childhood and home life. Our standard for reviewing claims of ineffective assistance of counsel is set forth in Syllabus Point 5 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), which states as follows:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Petitioner argues that his trial counsel failed to investigate and present mitigation evidence related to petitioner's abusive childhood. The circuit court ruled that counsel's performance was not deficient because counsel adopted a strategy to attempt to obtain a conviction for second degree murder and that petitioner prohibited him from presenting any mitigation evidence. Petitioner concedes that his counsel elicited from him testimony that his parents were abusive, but contends that further investigation would have revealed additional mitigation evidence. Petitioner contends that his medical records showed a traumatic separation from his mother at age seven, his attempts to run away from home, his hospitalizations, his alcohol and drug problems, his suicide attempts, and his mental health treatment. However, all his counsel did with this information was to provide it to a psychiatrist who evaluated petitioner with regard to his competency to stand trial. Petitioner asserts that his counsel should have explained to him that the presentation of this mitigation evidence would have been consistent with petitioner's wishes to pursue a second degree murder conviction.

Additionally, petitioner argues that, under the second prong of *Strickland,* he was prejudiced by his counsel's deficient performance. As support, petitioner presented several

4

witnesses at his omnibus hearing who knew petitioner and his family from the time petitioner was young. These witnesses all told the habeas court about the horrible treatment he received from his father and stepmother. Additionally, Dr. Timothy Saar testified about petitioner's struggles with substance abuse and mental health issues, which were all related to his childhood treatment. Petitioner argues that this evidence would not have been ignored by the members of the jury, and if they had heard it, they would have recommended mercy.

Upon our review of the record on appeal, we do not find that petitioner's trial counsel's performance was objectively deficient. With respect to evaluating the first prong of *Strickland,* we have held that

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Miller.*

First, the record reveals that petitioner was nothing short of a volatile powder-keg throughout the trial. He refused to cooperate with counsel, filed his own motions, refused to identify witnesses, refused to allow his counsel to allow admission of a psychiatric/psychological examination that he had partially refused to undergo, and refused to recognize the very real possibility of a first degree murder conviction. Second, the record shows that his trial counsel engaged in extensive pretrial motions practice and made timely and appropriate objections during trial. Third, counsel's strategy at trial was to show that this was a crime of passion. Unlike in *Shofield,*[4] a jury verdict for second degree murder or manslaughter in the present case was possible, and the mitigation evidence petitioner now complains could have worked against him at trial. Finally, as respondent correctly notes, the mitigation evidence that petitioner presented at the habeas hearing is the result of petitioner's post-trial decision to be forthcoming with his background. Accordingly, we find no error in the circuit court's finding that petitioner's trial counsel's performance was not objectively deficient under *Strickland*. Having agreed with the habeas court's finding on this prong, it is unnecessary for this Court to address the second prong of *Strickland*: whether he was prejudiced by his counsel's performance.

---

[4] In *Schofield*, the defendant was convicted of first degree murder without a recommendation of mercy. However, the similarities between *Schofield* and the present case end there. Unlike petitioner, the defendant in *Schofield* gave a statement to the police that he shot the victim "to see what it was like to kill someone." *Id.*, 185 W.Va. at 201, 406 S.E.2d at 427. Additionally, the defendant testified at his trial and admitted to the killing. Yet, he instructed his counsel that he would only plead guilty to manslaughter, a result counsel should have recognized as "virtually impossible" to obtain, thus, triggering an obligation by counsel to present mitigating evidence despite the defendant's desires.

5

Petitioner's second assignment of error is that the circuit court failed to find that petitioner was denied his right to remain silent and to due process of law when (1) the arresting officer testified to petitioner's refusal to give a statement, and (2) the prosecutor cross-examined petitioner about not telling his side of the story to the arresting officer. In Syllabus Point 1 of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court held that

> [u]nder the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

We have further held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State v. Flippo,* 212 W.Va. 560, 575 S.E.2d 170 (2002) (citations omitted).

Petitioner argues that the prosecutor knew that petitioner's argument would be that he did not intend to kill his ex-wife, so the prosecutor intentionally attacked his credibility by cross-examining him on his refusal to "tell his side of the story." Petitioner further argues that this error was compounded by the fact that the prosecutor's question followed a sustained objection when the arresting officer referenced petitioner's refusal to give a statement.

With respect to the arresting officer's testimony regarding petitioner's desire to remain silent upon his arrest, the record plainly demonstrates that petitioner's trial counsel timely objected and the circuit court instructed the jury to disregard the officer's statement. Moreover, the comment was made in the context of the officer explaining the chain of custody for the murder weapon. Because the circuit court did not permit testimony regarding petitioner's invocation of his right to remain silent, we find no error.

With respect to the prosecutor's single cross-examination question to petitioner regarding petitioner choosing not to "tell his side of the story," again, the record demonstrates that petitioner's trial counsel promptly objected and the circuit court sustained the objection. This fact pattern is opposite the facts in *Boyd.* In *Boyd,* the State sought to impeach the defendant as to why he did not disclose his story that he acted in self-defense to the police at the jail. When Mr. Boyd's counsel objected, the trial court overruled the objection and permitted the questioning to continue, which forced Mr. Boyd to testify to his pretrial silence. In the present case, the circuit court did not allow the constitutionally impermissible evidence to be presented to the jury. This distinction is critical to our conclusion in the present case that the prosecutor's unanswered question did not constitute error.

In any event, any error that may have occurred was harmless. *See State v. Hillberry,* 233 W.Va. 27, 754 S.E.2d 603 (2014) (finding no reversible error where the reference to a defendant's pretrial silence was an isolated comment and the prejudicial effect was minimal). At petitioner's trial, there was eyewitness testimony that petitioner restrained Ms. Buxton in a headlock and put a gun to her head. The neighbor further testified that he pleaded with petitioner to release Ms. Buxton up until the moment petitioner shot her in the head. Further, the State did

not dwell on petitioner's invocation of his right to remain silent to prove its case, and the State's case relied heavily on the eyewitness account to the killing. Based on our review, we cannot conclude that the arresting officer's reference to petitioner choosing to remain silent and to the prosecutor's unanswered cross-examination question warrant reversal of petitioner's first degree murder conviction. Accordingly, we find that petitioner is not entitled to habeas relief under the facts presented in this case.

For the foregoing reasons, we affirm the Circuit Court of Wayne County's order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** May 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II