# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-1110** (Marion County 16-F-12)

**Jeffrey Lynn Hovatter,**
**Defendant Below, Petitioner**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey Lynn Hovatter, by counsel Neal Jay Hamilton, appeals the Circuit Court of Marion County's "Sentencing Order" entered on November 4, 2016, wherein in the circuit court sentenced petitioner to life in prison without the possibility of parole following his conviction of first degree murder. Respondent State of West Virginia, by counsel Robert L. Hogan, filed a response. On appeal, petitioner challenges the circuit court's failure to (1) conduct a pretrial hearing to determine whether to bifurcate the guilt and mercy phases of the trial and (2) sustain objections to allegedly prejudicial and improper opinion testimony.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, a grand jury indicted petitioner on a single count of murder in the first degree. Petitioner was accused of fatally shooting his ex-wife, Nancy Eileen Shaw, in her residence in Fairmont, West Virginia. The case proceeded to a jury trial in which the evidence revealed that on the evening of July 30, 2015, petitioner traveled from his home in Preston County, West Virginia, to the victim's residence. The victim's neighbors heard petitioner and the victim loudly arguing, unsuccessfully attempted to enter the victim's residence, and then notified police. The police arrived at the victim's residence shortly thereafter and forced entry into the home. As police ascended the stairway toward the victim's second-floor bedroom, they heard two gunshots and exited the premises in order to notify the Marion County Sheriff's Department Special Response Team. When the Special Response Team entered the bedroom, they discovered the victim, deceased, with a gunshot wound to her forehead and petitioner with a gunshot wound to his face from an apparent attempted suicide. Petitioner was still conscious.

Prior to trial, petitioner underwent a psychiatric evaluation to determine his competency to stand trial and criminal responsibility. The evaluation determined that he exhibited symptoms of major depressive disorder and substantiated instances of delusions and hallucinations during

1

his initial months in jail following his arrest. However, the evaluation concluded that petitioner was competent to stand trial and that his "ability to conform his conduct to the requirements of the law" was not impaired at the time of the crime. Petitioner did not request bifurcation of the guilt and mercy phases of the trial.

After four days of trial, the jury found petitioner guilty of murder in the first degree and did not recommend that he receive mercy in sentencing. Following a hearing, the circuit court sentenced petitioner to life in prison without the possibility of parole by order entered on November 4, 2016. This appeal followed.

Petitioner raises two assignments of error on appeal. First, he asserts that the circuit court's failure to conduct a pretrial hearing to determine whether he voluntarily, knowingly, and intelligently desired a unified trial violated his state and federal constitutional due process rights. Petitioner's counsel states that he and petitioner discussed whether to have a bifurcated or unitary trial in advance of trial, and made no motion for bifurcation. However, petitioner argues that under the unique circumstances of this case -- in which petitioner suffered a severe head injury and experienced delusions while in jail -- the circuit court should have conducted a hearing to determine whether petitioner understood his decision in the context of his due process rights. Petitioner adds that, in reviewing the denial of bifurcation motions, other courts have recognized that unitary trials are replete with possible prejudice. For example, he argues, the United States Court of Appeals District of Columbia Circuit has stated that

> a unitary trial involving both the merits and the issue of criminal responsibility is replete with potential sources of prejudice. Accordingly, especially since the cost of bifurcation to substantial state interests is often minimal or even negative, the trial court should be alert to the need for separate trials whenever the accused proposes to present an insanity defense, regardless of whether defense counsel makes an initial request or an initially sufficient showing of need. In this area as in others, the realities of the contemporary criminal process, in which commonly indigent defendants are often represented by counsel unfamiliar with the intricacies of criminal law and procedure, require the trial court's active concern to insure the fairness of the trial.

*Contee v. United States*, 410 F.2d 249, 250 (D.C. Cir. 1969) (citing *Holmes v. United States,* 363 F.2d 281 (1966)). This point is especially true, petitioner asserts, where the defense relies on insanity or diminished capacity. *See Schofield v. W.Va. Dep't of Corr.,* 185 W. Va. 199, 207, 406 S.E.2d 425, 433 (1991)(Workman J., dissenting)("The determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation of all relevant circumstances without regard to strategy during trial on the merits.").

Upon our review of the record and our applicable precedent, we must reject petitioner's argument. As the State points out, the circuit court is not obligated to consider bifurcation sua sponte; rather, it is incumbent on the defense to pursue it. In syllabus point 4 of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court held that "[a] trial court has discretionary

authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." We recently held further that

> [w]hether or not to make a motion for a bifurcated mercy proceeding pursuant to *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), is a matter of strategy and tactics and is thus a decision to be made by the parties and their advocates. A trial court does not have a duty to *sua sponte* order bifurcation.

Syl. Pt. 8, *State v. Heater*, 237 W. Va. 638, 790 S.E.2d 49 (2016), *cert. denied sub nom. Heater v. W. Virginia*, 137 S. Ct. 1829, 197 L. Ed. 2d 771 (2017).

Additionally, as part of petitioner's competency evaluation, it was determined the petitioner was able to "consult with his attorney with a reasonable degree of rational understanding." Thus, we find no basis upon which to conclude that petitioner failed to understand the discussion with his counsel regarding whether to pursue bifurcation. Relying on *Contee* and *Holmes*, petitioner urges this Court to change our law; under the facts of this case, we decline to do so. Accordingly, because petitioner did not seek a bifurcated trial, we find no error.

Petitioner's second and final assignment of error is that the circuit court failed to sustain objections to prejudicial statements and improper opinion testimony of Detective Eric Hudson during the State's case-in-chief. Petitioner challenges three statements made by Detective Hudson during his testimony, which the circuit court admitted over petitioner's objection. First, Detective Hudson described the victim's wounds as follows:

> It was obvious to me due to the concave nature of the wound and upon turning her hand over, the presence of a vast amount of powder stippling that she had her hand up in front of her face and was struck by the bullet on her finger . . . before it struck her in the forehead.

Detective Hudson next described a crime scene photo, saying, "I believe it depicts the empty cartridge that took Nancy Shaw's life." Third, Detective Hudson testified as follows with regard to another photo:

> [Detective Hudson]:  I charge you to look at this photo and see how much gunpowder is present on Ms. Shaw's hand. Seventy-two (72) inches as [defense counsel] wanted to muddy the waters, would be –
> [Defense counsel]: Objection to characterizing –
> [Detective Hudson]: I'm sorry. My apologies.
> THE COURT: Stay to the facts.
> [Detective Hudson]: Yes sir.

This Court has held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). Additionally,

[i]n order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue.

Syl. Pt. 9, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) (citation omitted). "The determination of whether a witness has sufficient knowledge of the matter in question so as to be qualified to give his opinion is largely within the discretion of the trial court and will not ordinarily be disturbed on appeal unless clearly and prejudicially erroneous." Syl. Pt. 4, *Cox v. Galigher Motor Sales Co.*, 158 W. Va. 685, 213 S.E.2d 475 (1975).

Upon our review, Detective Hudson's statements at trial regarding the victim's wound and the empty bullet cartridge were admissible lay witness testimony. The record establishes that he personally visited the crime scene and had served in law enforcement for approximately six years. Thus, he was speaking to facts he personally observed in the context of his experience as a police officer. The rational connection between his opinions and the facts he observed is clear and assisted the jury in determining the nature of the victim's death, i.e., a gunshot wound. Finally, with respect to Detective Hudson's third statement about the presence of gunpowder on the victim's hand, the record clearly shows that the circuit court sustained defense counsel's objection and directed Detective Hudson to "stay to the facts." Accordingly, we find no basis upon which to reverse petitioner's first-degree murder conviction.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 5, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis

4