State *ex rel.* WILLIAM CLIFFORD RASNAKE

*v.*

STEVEN D. NARICK, *Judge, etc.*

(No. 13669)

*and*

State *ex rel.* RICKEY LEE SCHNELLE

*v.*

STEVEN D. NARICK, *Judge, etc.*

(No. 13670)

Decided April 6, 1976.

*Galbraith, Seibert & Kasserman, Ronald W. Kasserman* for Rasnake.

*Bailey, Byrum & Vieweg, George B. Vieweg, III* for Schnelle.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *David P. Cleek,* Assistant Attorney General, for respondent.

BERRY, CHIEF JUSTICE:

These two original proceedings in prohibition involve multiple challenges to the constitutionality of West Virginia's rape statute, *W. Va. Code,* 61-2-15, *as amended.* Because the cases involve substantially identical matters, this Court, on joint motion of the parties, consolidated the cases for briefing and argument and they will be decided together.

William Clifford Rasnake was indicted by a grand jury of Marshall County, West Virginia, on July 8, 1975, on a charge of forcible rape. Rickey Lee Schnelle was also indicted for forcible rape by a grand jury of Marshall County, West Virginia on November 12, 1975. Both criminal prosecutions are still in preliminary stages, neither petitioner having entered a plea to the charges against him.

The important language in the statute under attack, *W. Va. Code,* 61-2-15, *as amended,* provides:

"If any male person carnally knows a female person, not his wife, against her will by force ... he shall be guilty of a felony, and, upon conviction, shall be punished with confinement in the penitentiary for life, and he, notwithstanding the provisions of Article 12 [§62-12-1 et seq.], chapter sixty-two of this Code, shall not be eligible for parole: *Provided, that the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall*

*be punished with confinement in the penitentiary for not less than ten nor more than twenty years: Provided, however, that if the accused pleads guilty, the court, may, in its discretion, provide that such person shall be punished with confinement in the penitentiary for not less than ten nor more than twenty years."* [emphasis supplied.]

The repetitious multiple challenges made to the statute can be consolidated into three basic issues: (1) whether *W. Va. Code,* 61-2-15 *as amended,* is invalid in that it encourages an accused to plead guilty in violation of the Fifth Amendment to the United States Constitution, and concomitantly that it invites the defendant to relinquish his constitutional right to a trial by jury as guaranteed by the Sixth Amendment to the Constitution of the United States; (2) whether the statute is invalid in that it provides for a unitary trial to determine the issue of guilt as well as the possible sentence upon a finding of guilt, thus depriving the accused of his right to an impartial jury under the provisions of the Sixth Amendment to the United States Constitution; and (3) whether the statute is invalid in that it grants to the judge or jury the authority to impose a life sentence, or discretionarily, a sentence of from ten to twenty years imprisonment, without sufficient standards to guide in the discretionary exercise in violation of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and in violation of the prohibition against cruel and unusual punishment of the Eighth Amendment to the *United States Constitution.*

I

With regard to the first issue, the petitioners contend that the statute in question encourages them to plead guilty in order to avoid a potentially more harsh sentence which may result from a jury trial. The petitioners rely heavily on the case of *United States v. Jackson,* 390 U.S. 570, 20 L.Ed.2d 138, 88 S.Ct. 1209 (1968), in support of their argument.

In *Jackson*, the United States Supreme Court invalidated a provision of the Federal Kidnapping Act which made the offense punishable by death if recommended by the jury, but provided no procedure for the imposition of the death penalty by the court where the accused waived the right to a jury trial and pleaded guilty. The Court ruled that the statute imposed an impermissible burden upon the defendant's exercise of his Fifth Amendment right to not plead guilty and his Sixth Amendment right to a jury trial.

The same result was reached in *Spillers v. State*, 84 Nev. 23, 436 P.2d 18 (1968), in which the Supreme Court of Nevada found that a statute similar to the Federal Kidnapping Act was unconstitutional. In that case, the Nevada statute allowed a jury to impose the death penalty if a defendant were found guilty of rape by violence but limited the trial court's power to punish to a term of imprisonment of not less than twenty years.

Obviously, if the law under scrutiny here possessed the same characteristics as the statutes struck down in *Jackson* and *Spillers*, its constitutionality would be in serious doubt. However, the West Virginia statute is entirely different from the federal kidnapping statute and the Nevada rape statute in that it vests the same discretion in the trial court as it does in the jury. If the defendant pleads not guilty and the jury finds him guilty and goes no further, a life sentence will be imposed. If it recommends mercy, the sentence of ten to twenty years will be imposed. On the other hand, if the defendant pleads guilty, the judge may either impose a life sentence or, in his discretion, show mercy and impose a sentence of ten to twenty years. With virtually identical alternatives, the statute encourages neither a guilty plea nor the relinquishment of a jury trial.

Both state and federal courts have found no constitutional flaw in statutes vesting identical discretion in both the court and the jury. For example, it was held in *People v. Bradley*, 130 Ill. App.2d 1061, 264 N.Ed.2d 892 (1970) that a defendant was not coerced into surrender-

ing his right to a trial by jury and was not encouraged to plead guilty to a charge of voluntary manslaughter because the death penalty might be invoked on the murder charge on the jury's recommendation, since the judge sitting without a jury in a murder case could also impose the death sentence.

In *Commonwealth v. Hargrove*, 434 Pa. 393, 254 A.2d 22 (1969), the Supreme Court of Pennsylvania held that a plea of guilty to a murder charge was not unconstitutionally encouraged, notwithstanding the defendant's claim that he had been induced to plead guilty because of his belief that if he were to stand trial there was a greater likelihood that he would receive the death sentence. This decision was based on the fact that under the Pennsylvania statute the defendant faced the same possibility of a death sentence whether he pleaded guilty or not guilty since both the judge and the jury had the authority to impose the death sentence. In discussing the *Jackson* case, the Pennsylvania Court stated:

"It is a clear cut choice between avoiding and risking the death penalty which the Supreme Court found to be such an overbearing one in *Jackson*. Here no such decision was placed before the defendant. At worst the defendant had to make a choice between probabilities, neither of which carried any *guarantee* that the death penalty would not ultimately be imposed . . . . [W]e do not believe that the Pennsylvania procedure suffers from the same constitutional infirmities as that struck down in *Jackson*." [emphasis in original.]

Similarly, in *Sims v. Eyman*, 405 F.2d 439 (9th Cir. 1969), the court held:

"Under Arizona law either the judge or the jury can impose the death penalty so that a defendant must risk death regardless of whether he pleads guilty or chooses a jury trial. The 'burden' petitioner complains of is simply that slight-

ly different evidence may be introduced before a judge, on a guilty plea, than before a jury. This does not constitute the type of burden on the assertion of constitutional rights which *Jackson* would forbid." *Id.* at 446.

The petitioners suggest that, as a practical matter, they are under a subtle compulsion to plead guilty to obtain a plea bargain which would enhance the probability of their obtaining the mitigated sentence. We note that there are uncertainties in every criminal prosecution and trial, many of which can be reduced to a greater degree of probability by engaging in plea bargaining. The mere fact that an accused pleads guilty with the belief that he may receive a mitigated sentence, without more, does not mean that the plea was unconstitutionally coerced or encouraged. *Commonwealth v. Morrow,* 363 Mass. 601, 296 N.E.2d 468 (1973). *See also, Brady v. United States,* 397 U.S. 742, 25 L.Ed.2d 747, 90 S.Ct. 1463 (1970).

We are compelled to the conclusion that the petitioners' first attack on the statute is without foundation.

## II

The petitioners argue that by virtue of the fact that the statute allows a single jury to determine both the issue of guilt and degree of punishment, that their right to a fair and impartial jury is violated. This contention is founded on the assertion that an accused must either take the stand and give testimony in an attempt to mitigate the sentence, thereby subjecting himself to cross-examination on matters which may be prejudicial to his defense to the crime with which he is charged, or remain silent and run the risk of inferences that may be drawn from his failure to testify. The Supreme Court of the United States has held on more than one occasion that a unitary trial on multiple issues is not unconstitutional. *See, McGautha v. California,* 402 U.S. 183, 28 L.Ed.2d 711, 91 S.Ct. 1454 (1971); *Spencer v. Texas,* 385 U.S. 554, 17 L.Ed.2d 606, 87 S.Ct. 648 (1967).

In *Spencer*, the Supreme Court examined a Texas procedure which provided a unitary trial on both the substantive offense and a recidivism charge. The Court observed that although a two-stage jury trial or some other alternative might have been used instead of the procedures established, those procedures, in view of the limiting instructions given to the jurors, were not an unconstitutional means of serving the valid state purpose. In *McGautha*, the Supreme Court upheld a unitary trial procedure in which the jury determined both issues of guilt and punishment. The court specifically rejected the same arguments as are advanced by the petitioners here. Similarly, the Supreme Court of Virginia, in *Johnson v. Commonwealth*, 208 Va. 481, 158 S.E.2d 725 (1968), ruled that a defendant was not denied due process by a single verdict procedure in which issues of guilt and punishment were submitted simultaneously to a jury.

While many courts have indicated sympathy for the concept of a bifurcated trial procedure in some circumstances, the authorities have been uniform in holding that such a procedure is not constitutionally mandated. Two-part trials are uncommon in our jurisprudence although the legislature has established a bifurcated trial system for cases of recidivism in this State. *See, W. Va. Code*, 61-11-19. So, if there is to be any change in the jury procedure in rape cases or any other case in which the jury is presently charged with the responsibility of determining guilt and punishment, the change is one of policy which must be left to the legislature. *Spencer v. Texas, supra; Johnson v. Commonwealth, supra.*

### III

The third and final issue raised in the case at bar relates to the assertion that the West Virginia rape statute is violative of due process because it permits either the judge or jury to impose a life sentence or in the alternative a sentence of ten to twenty years without establishing some standards to guide the discretion of either the court or jury in their action.

The Supreme Court of the United States in *McGautha v. California, supra,* specifically held that the absence of standards to determine whether the death penalty or a lesser penalty should be imposed did not violate due process. The Court stated that to express standards in language that could be fairly understood and applied appeared to be a task beyond present human ability; that no list of variables or circumstances to be considered would ever be complete and that the variety of cases and facets of each case would make general standards either meaningless or a statement that no jury would need.

The decision of the Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed.2d 346, 92 S.Ct. 2726 (1972), has caused some confusion relative to the continued vitality of the *McGautha* case. In a brief *per curiam* opinion in *Furman,* the Court held that the imposition of the death penalty in the three cases before it constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The reasoning behind this decision can only be gleaned, by inference, from the nine separate opinions of the Justices. A reading of those separate opinions seems to indicate that the majority ruling was based, at least in part, on the rationale that the discriminatory imposition of the death penalty on the members of certain groups was constitutionally offensive. Apparently it was the *abuse* of discretion rather than discretion itself which was condemned. The decision in *Furman* in no way overruled the rationale of the *McGautha* case with regard to the necessity of standards to govern the exercise of discretion. In any event, no evidence has been introduced in the instant cases of any discriminatory conduct by West Virginia juries in the imposition of a life sentence for forcible rape and, therefore, the logic in the *Furman* case is inapplicable.

In addition to the Supreme Court's decision in *McGautha,* many courts throughout the country have held that the lack of standards for the imposition of penalties does not constitute a violation of a constitutional right. *See, e.g., Johnson v. Commonwealth, supra;*

*Sims v. Eyman, supra; In Re Anderson*, 69 Cal.2d 613, 447 P.2d 117 (1968). It has also been held that the imposition of a life sentence for the offense of rape does not constitute cruel and unusual punishment per se. *Commonwealth v. Morrow, supra; Martin v. Commonwealth*, 493 S.W.2d 714 (Ky. 1973).

For the reasons stated herein, the writs prayed for are denied.

*Writs denied.*

NEELY, JUSTICE, *dissenting:*

I respectfully dissent to syllabus point 2 which authorizes a unitary jury verdict with regard both to guilt and sentence.

Under both the West Virginia rape and first degree murder statutes, *W. Va. Code*, § 62-3-15 [1965] and § 61-2-15 [1965] the jury determines guilt in the first instance and simultaneously determines whether life imprisonment or a lesser sentence will be imposed. While it is impossible to dictate standards to guide jury discretion in determining the question of whether mercy should be accorded a defendant, it does not follow that evidence with regard to the circumstances surrounding the perpetration of the crime, the motives of the accused, and the provocation which prompted the act are all irrelevant.[1]

---

[1]The Model Penal Code, for example, has identified eight relevant mitigating circumstances for juries to consider in murder cases which might equally apply to other serious felonies:

"(4) Mitigating Circumstances.

"(a) The defendant has no significant history of prior criminal activity.

"(b) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(c) The victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

"(d) The murder was committed under circumstances which the defendant believed to provide a moral justification or extenuation for his conduct.

"(e) The defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor.

While the civil rules provide that a civil litigant may plead inconsistent defenses it is unreasonable to believe that a simultaneous assertion of innocence and mitigation is workable in a criminal jury trial. It is impossible for a criminal defendant to maintain his innocence, introduce evidence in support of that proposition, and simultaneously introduce all of the evidence which would tend to mitigate the punishment. Since evidence of mitigation can only be taken as a confession of guilt, the criminal defendant will frequently be forced, as a matter of strategy, to curtail or eliminate his presentation of evidence on mitigating circumstances. Any such compelled choice undeniably burdens the criminal defendant's right to be heard on the issues of punishment and sentence.[2]

---

"(f) The defendant acted under duress or under the domination of another person.

"(g) At the time of the murder, the capacity of the defendant to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication.

"(h) The youth of the defendant at the time of the crime." Model Penal Code §210.6 (Proposed Official Draft, 1962).

[2]This right has long been recognized by the United States Supreme Court, which recently, on July 2, 1976, after the filing of the majority opinion in this case, restated the general rule and imposed in capital cases a specific constitutional requirement for sentencing authorities to consider both the offender and the circumstances of his offense:

"This Court has previously recognized that '[f]or the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.' *Pennsylvania v. Ashe*, 302 U.S. 51, 55 (1937). Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development. *See*, *Williams v. New York*, 337 U.S. 241, 247–249 (1949); *Furman v. Georgia*, 408 U.S., at 402–403 (Burger, C. J., dissenting). While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional impera-

On the other hand, a criminal defendant who chooses, from necessity, to introduce evidence on mitigation suffers the loss of his right to have the State prove its case beyond a reasonable doubt while he stands mute and offers no evidence on the issue of innocence. This is the time-tested way of securing a jury acquittal, and as the right is constitutionally guaranteed to a defendant, any procedure which circumscribes its use is inherently unconstitutional. *W. Va. Constitution*, Article 3, section 5; *U.S. Constitution* amend. V; *Malloy v. Hogan*, 378 U.S. 1 (1964); *see, United States v. Jackson*, 390 U.S. 570 (1968); *Garrity v. New Jersey*, 385 U.S. 493 (1967); *Simmons v. United States*, 390 U.S. 377 (1968).

Under our current unitary trial procedure it is necessary for a defendant to set forth all the mitigating circumstances which would bear upon a recommendation of mercy before the question of guilt is determined. There is no reason why a jury cannot hear evidence on mitigation after it has returned a verdict, as such a procedure imposes no unreasonable burden on the court which would outweigh the advantages to be obtained in terms of rational procedure.[3]

---

tive, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment, *see Trop v. Dulles*, 356 U.S., at 100 (plurality opinion), requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*,         U.S.      , (plurality opinion).

[3]The obvious advantages of a bifurcated trial have led experts to recommend its adoption as a means of rationalizing jury sentencing. The United States Supreme Court has recently noted this trend:

"Much of the information that is relevant to the sentencing decision may have no relevance to the question of guilt, or may even be extremely prejudicial to a fair determination of that question. This problem, however, is scarcely insurmountable. Those who have studied the question suggest that a bifurcated procedure—one in

I have long held the opinion that even in an ordinary trial where all of the discretion with regard to the length of sentence (where the sentence is determinant), suspension of sentence, and probation is vested in the trial court a criminal defendant is absolutely entitled to a full and fair hearing on the question of punishment. While there are no recent cases in this jurisdiction discussing the problem, it appears to be the procedure in the better courts of record to accord the defendant a fair hearing on the question of punishment. *See e.g., McKinney's Consolidated Laws of N.Y. Ann.* CPL §390.10 *et seq.; Ga. Code Ann.,* §27-2502 *et seq.; Mass. General Laws Ann.,* c. 279, §3A *et seq., Commonwealth v. Celeste,* 358 Mass. 307, 264 N.E.2d 683 (1970). Frequently it escapes the attention of appellate courts that it makes a great deal of difference to the defendant whether he is sentenced to ten or thirty years for armed robbery, or whether he is confined at all, or placed on probation. It seems obvious from the clear direction of national authority that whenever there is a substantial question

which the question of sentence is not considered until the determination of guilt has been made—is the best answer. The drafters of the Model Penal Code concluded that if a unitary proceeding is used

'the determination of punishment must be based on less than all the evidence that has a bearing on that issue, such for example as a previous criminal record of the accused, or evidence must be admitted on the ground that it is relevant to sentence, though it would be excluded as irrelevant or prejudicial with respect to guilt or innocence alone. Trial lawyers understandably have little confidence in a solution that admits the evidence and trusts to an instruction to the jury that it should be considered only in determining the penalty and disregarded in assessing guilt.

'... The obvious solution ... is to bifurcate the proceeding, abiding strictly by the rules of evidence until and unless there is a conviction, but once guilt has been determined opening the record to further information that is relevant to sentence. This is the analogue of the procedure in the ordinary case when capital punishment is not in issue; the court conducts a separate inquiry before imposing sentence.' Model Penal Code §201.6, Comment 5, pp. 74–75 (Tent. Draft No. 9, 1959)." *Gregg v. Georgia,* U.S. , (plurality opinion).

with regard to liberty, in this case twenty years confinement or life confinement, and in other cases incarceration as opposed to probation or a suspended sentence, a person is entitled to all of the due process rights which are traditionally accorded before a question involving a substantial right is decided, namely: (1) notice; (2) hearing; (3) confrontation; and (4) the right to call witnesses in one's own behalf. *Pointer v. Texas,* 380 U.S. 400 (1965); *Douglas v. Alabama,* 380 U.S. 415, 13 L.Ed.2d, 85 S.Ct. 1074 (1965); *Washington v. Texas,* 388 U.S. 14 (1967); *In re Gault,* 387 U.S. 1 (1967). It would appear at first blush that all these requirements are met at a criminal trial, but in practice the unitary procedure authorized by the majority opinion focuses exclusively on the question of guilt or innocence. One wonders, in fact, if under the strict rules of evidence in a trial in which the jury did not have discretion, evidence of mitigation would be admissible.

Most defense lawyers preparing for a criminal case have their witnesses in court to testify on the question of innocence, but do not have witnesses for mitigation. While the better trial courts in this State already give a full hearing before sentencing, no statute dictates such a procedure, and judicial caprice and arbitrariness can be allowed full bridle under the rubric of "did not abuse his sound discretion."

Accordingly I would hold that whenever there is a trial in which the jury is required both to determine guilt and the degree of punishment that a bifurcated procedure be used in which the defendant is given an opportunity to present evidence bearing on mitigation before the question of a recommendation of mercy is resolved by the jury, and that in other cases the defendant be given a hearing on punishment before imposition of sentence.

I am authorized to say that Mr. Justice Wilson joins in this dissent.