COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Agee and Senior Judge Hodges
Argued at Chesapeake, Virginia


MARLON GERMAINE WATSON

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0494-00-1        JUDGE G. STEVEN AGEE
                                       APRIL 24, 2001
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                Westbrook J. Parker, Judge

         Michael J. Lutke (Office of the Public
         Defender, on brief), for appellant.

         Kathleen B. Martin, Assistant Attorney
         General (Mark L. Earley, Attorney General,
         on brief), for appellee.


     Marlon Germaine Watson (Watson) was convicted and sentenced

in a bench trial in the Circuit Court of Southampton County for

one count of robbery in violation of Code § 18.2-58, and one

count of malicious wounding in violation of Code § 18.2-51.  He

appeals the robbery conviction averring that the evidence was

insufficient to support his conviction.  For the reasons set

forth below, we affirm.

                              I.

     In the months of June and July 1998, Watson, then a

twenty-one-year-old seasonal farm worker, shared a rented room

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

with two or three other farm workers at the Courtland Inn Motel in Southampton County. On July 23, 1998, however, Watson obtained a separate room for himself for one night. Watson verbally provided his name as "James Peters" but failed to produce any identification. Watson's signature on the motel's registration card, however, provided the name "Watson."

Between 8:30 p.m. and 9:00 p.m. on July 24, 1998, Jagmohan Shah (Shah), the seventy-year-old motel manager, found Watson waiting for him outside the motel's locked office. Watson told Shah he "want[ed] to pay the rent" even though Watson had never before handled the arrangements for the workers' room. Shah, who always kept the office door locked and the keys on his person, unlocked the door of the office. As soon as Shah entered the office, Watson pushed him, causing Shah to fall. Watson locked the door and dragged Shah into his living quarters, adjacent to the office. Watson started beating Shah on the left side of his head, and then attempted to choke the elderly manager with a towel. When Watson was unable to choke Shah, he beat Shah's face and ear so hard that the ear was "displaced"; Shah lost consciousness.

At approximately 11:00 p.m., Annette Flythe (Flythe), a motel employee, arrived at the motel to deliver laundry. Watson approached her minutes later and asked her for a ride to the store. Once he was in the car, however, Watson directed Flythe to "keep going" whereupon she drove until Watson eventually

-

exited the car in North Carolina.  Watson did not pay Flythe for the ride, but she did not think that was unusual.  Watson took no personal belongings with him.

Shah slowly regained consciousness and called 911 at approximately 11:12 p.m.  While placing the emergency call from the office phone, Shah realized the desk drawer containing the motel's cash box had been broken into.  Shah fell unconscious again.

The first sheriff's deputy arrived at the motel at approximately 11:15 p.m.  The investigating officer, R.W. Carwile, arrived at 11:29 p.m. and found residents of the motel "milling around" outside.  Approaching the crime scene, the officer found the door to the office closed, but unlocked.  Inside, Officer Carwile found the drawer where the cash box was kept broken into, the cash box had the key in it, and the motel's money was missing.  Shah estimated the cash box held $1,200 that evening.  (The money was never recovered.)

Shah slipped in and out of consciousness several times and spent the night at a local hospital.  Initially he could not remember what had happened, however his memory returned the following day and he recalled the incident "exactly."  Shah was certain Watson was his assailant.  Only Watson had been in the room when Shah was beaten, and Watson was the only person who had come to pay the rent that night.  Shah identified Watson from a photo array on July 31, 1998.  Flythe also identified

-

Watson from the array.  Watson was subsequently arrested in the state of Georgia in 1999.

These details were presented at trial by the Commonwealth. At the close of the Commonwealth's case, Watson moved to strike the evidence, arguing the Commonwealth had not proven when the robbery occurred or that Watson had committed the crime.  Watson argued that while Shah was unconscious, someone other than Watson could have entered the unlocked office and committed the robbery.  The trial court overruled the motion.  Watson presented no evidence in his behalf, and the court rendered its decision of guilty.  With regard to the robbery, the judge said:

> [W]hat we have in th[is] case is a man who attacks Mr. Shah, leaves him unconscious. When Mr. Shah wakes up the money's gone and shortly thereafter, sometime during that same period of time an employee takes this man to North Carolina to flee with no property, not his blue calendar, no luggage, not nothing.  So it's a circumstantial case. The question is whether or not he robbed the man and the answer is obvious.  Of course he did.  That's the reason he beat him up.  He beat him up, took the money and escaped to North Carolina and stayed gone until they found him in Georgia . . . .

## II.

When the sufficiency of the evidence is challenged, we consider all the evidence, and any reasonable inferences fairly deducible therefrom, in the light most favorable to the party that prevailed at trial, which is the Commonwealth in this case. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534,

-

537 (1975). Witness credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. See Code § 8.01-680. We will not substitute our judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).

To convict Watson of robbery, the Commonwealth was required to show beyond a reasonable doubt that Watson committed "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968).

It is well established that circumstantial evidence is just as competent and entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt. Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). The Commonwealth's evidence, however, need not affirmatively disprove all theories which might negate the conclusion that the defendant committed the crimes; the conviction will instead be sustained if the evidence excludes every reasonable hypothesis of innocence. Higginbotham, 216 Va. at 353, 218 S.E.2d at 537.

-

The chain of necessary circumstances supporting guilt must be unbroken. The circumstances of motive, time, place, means and conduct must all concur to form an unbroken chain, which links the defendant to the crime beyond a reasonable doubt. Stover v. Commonwealth, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981).

In this case, the only reasonable hypothesis flowing from the evidence is that Watson took the money from the cash box in the motel office after he savagely beat the elderly manager, who possessed the office keys, into unconsciousness. This hypothesis is supported by a chain of circumstances, which provides more than a strong suspicion of guilt.

Watson had been staying in a room with several other men but obtained his own room for one night, using a false name. Watson gained entry into the locked office by falsely telling Shah he wanted to pay rent, something he had never before handled. Once inside, Watson pushed Shah down, locked the door, forced the elderly man into an adjacent room and then maliciously beat him.

Upon investigating the attack against Shah it was discovered that the motel's money was missing, taken with the use of the manager's keys last known to be in the manager's possession when he was attacked by Watson. He is the last person known to have been aware of where Shah was located and the last person known to have been in the office before police arrived. There is no evidence that anyone other than Watson

-

entered the office or adjacent living quarters while Shah was unconscious.  The only evidence that someone else might have been near the crime scene is the investigating officer's testimony that when he arrived, approximately fifteen minutes after the first officers responded to the 911 call, motel residents were "milling around," but outside the motel office.

While there was no specific testimony or evidence surrounding the theft, "[o]pportunity . . . when reinforced by other incriminating circumstances, may be sufficient to establish criminal agency beyond a reasonable doubt."  Christian v. Commonwealth, 221 Va. 1078, 1082, 227 S.E.2d 205, 208 (1981); see also Phan v. Commonwealth, 258 Va. 506, 514, 521 S.E.2d 282, 286 (1999) (each single piece of evidence may be insufficient, but "the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion" (citations omitted)).

Further, Shah's unconscious state, which facilitated the theft, was a direct result of having been beaten severely by Watson.  The record contains no evidence of animosity between Watson and Shah that might explain the beating.  The reasonable inference, then, is that Watson's violent attack on Shah was a precursor to the robbery.  For what other purpose would a twenty-one-year-old man savagely beat and choke a seventy-year-old man without provocation after luring him into a closed office where the cash box was kept?  See Ingram v.

-

Commonwealth, 192 Va. 794, 803, 66 S.E.2d 846, 851 (1951) ("for what purpose [except rape] would a man attack a defenseless woman, at night, dressed in her nightclothes").  "Inferences and deductions from human conduct may be properly drawn when they follow naturally from facts proven."  Id.  Accord Green v. Commonwealth, 223 Va. 706, 711-12, 292 S.E.2d 605, 608-09 (1982) (affirming a fifteen year old's conviction for an attempted rape of a sixty-five-year-old woman who threw the victim to the floor and removed her clothes after entering her house on pretext, but fled when her husband approached).

The dissent relies on Commonwealth v. Smith, 259 Va. 780, 529 S.E.2d 78 (2000), to find the evidence insufficient to support Watson's robbery conviction.  We find the case distinguishable.

In Smith, the victim had been drinking heavily when Smith approached him and spoke a few instigating words regarding Smith's relationship with the victim's spouse.  Smith then punched the victim as he began to walk away.  The victim kept walking away, but then fell unconscious on a public street. When the victim awoke, hours later in a hospital, he was being treated for knife wounds.  No evidence was produced relating to what happened in the interval time between the victim falling unconscious and then awaking in the hospital to find that he had been stabbed.  The only evidence that Smith had committed the crime, on a public street, was that some of the knife wounds

-

were in the same place Smith had punched the victim.  The victim testified he did not see Smith with any weapon nor did he see blood when Smith punched him.  Smith's conviction was overturned on appeal based on the holding that the evidence raised no more than a suspicion of guilt.

In contrast to Smith, Watson had no reason to maliciously beat Shah.  There is no evidence of animosity or conflict between the two men.  Shah's unconscious state, allowing for the theft to occur, was caused by Watson's actions.  Shah's beating did not take place in public, but rather just prior to the robbery in a private, locked office where the motel's money was kept.  Watson is the last person known to have access to that office which he gained by subterfuge and subsequent use of violent force.  There is also the evidence that Watson remained on the motel's premises shortly thereafter until he could flee, without any of his belongings, including personal property that provided police with his true identity, originally thought to be "James Peters."

From the totality of these circumstances, the trial judge could conclude beyond a reasonable doubt that Watson committed the Courtland Inn Motel robbery.  We find that the Commonwealth met its burden of proving the guilt of Watson for the crime of robbery to the exclusion of every reasonable hypothesis consistent with his innocence.  Finding there was sufficient

-

evidence for the trial court to convict the appellant of robbery, we affirm the conviction.

<u>Affirmed</u>.

Benton, J., dissenting.

The Commonwealth bears the burden of proving every element of a criminal offense beyond a reasonable doubt. Adkins v. Commonwealth, 20 Va. App. 332, 342, 457 S.E.2d 382, 387 (1995). Thus, when a conviction is based on circumstantial evidence, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence." Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976). "[M]ere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 227 S.E.2d 205, 208 (1981) (citation omitted). The principle is well established, however, that "a suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction." Bishop v. Commonwealth, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984).

Although the evidence proved beyond a reasonable doubt that Marlon Germaine Watson severely beat Jagmohan Shah, no evidence proved who took the money from the office. During the beating, Shah lapsed into unconsciousness and remained in the office for almost three hours before the police arrived. No evidence proved what transpired in the interval of time between the beating and the arrival of the police officers. The officer who responded to Shah's telephone call testified that the door to the office was unlocked when he arrived and that people were gathered around

-

outside the office.  No one saw when or under what circumstances the money was taken.

Citing two robbery cases, People v. Adams, 81 Cal. Reptr. 378, 380 (Cal. App. 1969), and Sinks v. State, 133 N.E.2d 563, 565 (Ind. 1956), the Commonwealth argues that the evidence was sufficient to convict Watson for robbery even though no person saw the theft and Shah was unconscious.  In Adams, the evidence proved the following:

> The [victim, the defendant and the defendant's acquaintance] started walking down the street [at 3:00 a.m.].  Defendant suddenly put his arm around [the victim's] neck, forced him to the ground and fell on top of him.  [The victim] was greatly frightened.  He asked what defendant wanted and defendant replied that he wanted all of [the victim's] money.  [The victim] could feel defendant going through his pockets.  [The victim] was rendered unconscious.  He awoke in a pool of blood and found his wallet gone and the pocket in which it had been kept torn.  Also missing were the contents of his wallet:  about $50.00 in cash, four credit cards, his driver's license and miscellaneous identification.

81 Cal. Reptr. at 378-79.

In Sinks, the evidence proved that the victim drank beer for hours with the two defendants.  133 N.E.2d at 564.  As the victim left to go to a hotel with the defendants, they assured him that his money could be safely left with the hotel clerk and that they would not take his money.  Id.  The evidence further proved the following:

-

They had gone only a few steps when [one defendant], without saying a word, turned around and struck [the victim], knocking him down on the sidewalk and rendering him unconscious.  At the time [one defendant] struck him, [the other defendant] had his hand on [the victim's] shoulder.

About three minutes after the three left the tavern, the tavern owner looked out the window and saw [the victim] lying on the sidewalk.  Between the time the three left the tavern and [the victim] was seen lying on the sidewalk, no one came through the front door of the tavern, and no one was seen going by the place where he was lying. . . .  [The defendants] were arrested about a half hour later at an all night restaurant . . . .  As a result of a search, $27.35 was found on [one defendant] and $16 on [the other defendant].  Both men at the time stated they had borrowed the money.  In the presence of a police officer the next morning at the County Jail, [the victim] accused both [defendants] of striking him and robbing him, and each of them offered to repay [the victim] if he would not have them prosecuted.

Id.

Both cases are inapposite to the circumstances of this case.  In Adams, the evidence proved that the defendant demanded money from the victim and searched his pockets before the victim lost consciousness.  In Sinks, the evidence proved that after beating the victim, the defendants lied about borrowing money from the victim and sought to reimburse the victim when accused of robbery.  In addition, the evidence in Sinks affirmatively proved no other person approached the victim after the assault.

-

No such similar circumstances or evidence in this case tends to prove Watson took the money from the drawer.

Neither the testimony of Shah nor any other evidence tends to prove the circumstances surrounding the theft of the money. As in Commonwealth v. Smith, 259 Va. 780, 529 S.E.2d 78 (2000), the record contains insufficient evidence to prove who committed the offense. The Commonwealth argues that Smith is not controlling because the victim in Smith "was not aware he had been stabbed until he 'came to' later in a hospital." Therefore, the Commonwealth contends it is left to surmise who stabbed the victim after the accused beat him. That lack of evidence is precisely the flaw in the Commonwealth's proof concerning the robbery of Shah. Although the evidence proved beyond a reasonable doubt the assault, no evidence tends to prove the identity of the person who took the money. Watson made no demands for money from Shah. Moreover, Shah was unconscious for hours after the beating. The Commonwealth's own evidence proved that the door to the office was not locked when the officer responded to Shah's telephone call and that people were milling around outside the office.

As in Smith, the evidence proved that the accused committed a criminal act against the victim. Here, Watson maliciously wounded Shah and was convicted for that act. Similarly, as in Smith, the evidence is not inconsistent with the hypothesis that someone else committed the separately charged offense. "The

-

guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence." Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970).

The evidence proved that Watson left the motel two and a half hours after beating Shah. This conduct is as consistent with guilt of the felonious wounding as with any other hypothesis. When, as here, the evidence raises only an inference concerning the identity of the thief of the property and the evidence does not exclude the hypothesis that Watson was not the taker, the evidence amounts only to a suspicion of Watson's guilt. Evidence that proves the accused committed one offense and, because of his mere presence, had the opportunity to commit a second offense provides only the suspicion that the accused committed the second offense. See Smith, 259 Va. at 784, 529 S.E.2d at 79. That suspicion "'no matter how strong is insufficient to sustain a conviction.'" Id.

For these reasons, I would reverse the robbery conviction and dismiss the indictment.