655 S.E.2d 794

**STATE of West Virginia ex rel. Shane SHELTON, Petitioner Below, Appellant**

v.

**Howard PAINTER, Warden, Mount Olive Correctional Center, Respondent Below, Appellee.**

No. 33322.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2007.

Decided Nov. 21, 2007.

Concurring and Dissenting Opinion of Justice Benjamin Dec. 20, 2007.

Timothy F. Cogan, Esq., Cassidy, Myers, Cogan, Voegelin & Tennant, Wheeling, for Appellant.

Stephen L. Vogrin, Prosecuting Attorney, Wheeling, for Appellee.

PER CURIAM:

The appellant was convicted of murder in the first degree without a recommendation of mercy. This is a review of an appeal from the circuit court's ruling in a habeas corpus petition on the single issue of the appellant's claim of ineffective assistance of counsel.

For the reasons stated herein, we affirm, in part, and reverse, in part, and remand this case to the trial court for further proceedings.

I.

On August 15, 1995, the appellant, Shane Shelton, was standing outside an apartment building in Wheeling, West Virginia, and shot and killed Kenny Lawson as Lawson exited the building. Several witnesses observed the appellant before, during, and after the shooting. Mr. Lawson had multiple bullet holes in his body. After the shooting the appellant fled the scene and left the State of West Virginia.

On September 11, 1995, the appellant was indicted by the Ohio County grand jury for first degree murder.[1] The appellant was not arrested, however, until December 5, 1997. On December 16,1997, the appellant was arraigned and entered a plea of not guilty. After preliminary proceedings were concluded, the case was set for trial.

The appellant's trial lasted three days, beginning on March 23, 1998, and ending on March 25, 1998. During the trial twenty-four witnesses testified for the State. The only defense witness was the appellant. The State introduced forty-seven exhibits; the appellant did not introduce any exhibits. On the last day of the trial the jury convicted the appellant of first-degree murder without a recommendation of mercy. The trial was not bifurcated.

On April 2, 1998, the appellant was sentenced to life in prison without the possibility of parole. The appellant filed a direct appeal of his case which was refused by this Court on February 16, 1999.

On January 13, 2000, the appellant filed a *pro se* petition for writ of habeas corpus in the trial court, which was dismissed by the trial court on May 30, 2000. The appellant appealed that dismissal to this Court; this Court denied the appeal on September 28,- 2001.

On January 8, 2001, the appellant filed a petition for a writ of habeas corpus directly with this Court, and on May 24, 2001, this Court issued a rule directing that the matter be remanded to the trial court for appointment of counsel and the holding of an omnibus habeas corpus hearing.

On July 12, 2005, the appellant filed an amended petition for habeas corpus in the trial court. On April 6, 2006, the appellant filed a revised and amended petition. On April 7 and 10, 2006, the trial court conducted an omnibus habeas corpus evidentiary hearing. The appellant, the appellant's trial lawyers, and an expert witness in criminal defense testified. On June 16, 2006, the trial court denied habeas corpus relief.

Appellant appealed the June 16, 2006 order of the trial court. On February 27, 2007, this Court granted review on the single issue of whether trial counsel for the appellant in his original trial was ineffective.

II.

■ In Syllabus Point 1 of *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006) we held:

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

■ This Court addressed the issue of ineffective assistance of counsel in criminal cases in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). In Syllabus Point 5 *Miller* we held:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional er-

---

1. On March 19, 1998, the trial court granted the State's motion to amend the indictment to add "aka BIG BOY" to the appellant's name in the caption and body of the indictment.

rors, the result of the proceedings would have been different.

In explaining the two-pronged test, *Strickland, supra,* emphasizes the fairness of the trial and the reliability of the verdict. In *Strickland* the United States Supreme Court said:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the convictions or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

■ Further, in Syllabus Point 6 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995) we held:

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

With these principles in mind we proceed to consider whether the appellant was denied effective assistance of counsel.

A primary argument made by the appellant in support of his petition for habeas corpus relief is that the appellant's trial counsel rendered ineffective assistance when his trial counsel violated the duty of loyalty and advocacy during closing argument.

The following are excerpts from the closing argument made by the appellant's trial counsel which the appellant contends support his position:

... Mr. Shane Shelton [appellant] took the stand and stated that he killed Kenny Lawson. Mr. Shane Shelton killed Kenny Lawson. We're not disputing that.

The Judge gave you instructions based upon the facts and circumstances in this case. And the only instruction he did give you was First Degree Murder, with or without mercy. We are not disputing that.

Mr. Jacovette told you on opening that there's never any justification for any kind of killing, any kind of shooting. There is, but in this case, there was not. Mr. Shelton told you that he did kill Kenny Lawson.

. . .

Now in no way is that going to lead you to believe that Mr. Shane Shelton did not kill Kenny Lawson. There's no way you're going to go back in that jury room and come back with a not guilty verdict. We know that. We wouldn't suggest that. The evidence doesn't show that. Mr. Shelton didn't say that and the Judge probably won't allow it, based upon the instructions.

. . .

Could you grant mercy to what appears to be the murder of a seventeen year old juvenile? That's your decision, and that's a tough one. I'm not saying it's been easy for us either. That's [acquittal] just not going to happen. Period.

. . .

... that is not going to justify acquitting Shane Shelton. That's just not going to happen. Period.

That [State's witnesses refusal to disclose the identity of girls near the scene] has nothing to do with the verdict of acquittal.

That's not going to happen. I told you that. Don't take out of the evidence, don't take out what Mr. Shelton said out of the area in the situation he was in. Again, it doesn't justify an acquittal. That's not going to happen.

. . .

They [the State] could have proven this case beyond a reasonable doubt without us putting no [sic] any evidence at all.

If he [Shelton] has a story to tell, he's going to tell it. We're not going to tell him No, you're not going to testify, we don't want you to do this. He's going to take the stand and tell thirteen people now on this jury that he basically murdered somebody and his lawyers are going to let him do it? He had a story to tell. There was another side of the story; he wanted it to come out.

Whether the story about the bottle[2] was the only reason why someone would commit a murder or whether there was something else going on, I don't know. That's your decision. I'm not going to justify what Mr. Shelton said.

At the same time, I'm not going to request that this jury give him mercy? Of course, I am. I'm not going to be a fool; it's part of my job. I'm also not going to be a fool and say you don't ignore that you have the death of a seventeen year old juvenile. We know that happened.

And the State, rightfully so, said I agree with him. Mr. Ken Lawson could have grown up, become a productive member of society. His family will never see him again. His family will never meet his wife, his children, he will never meet his children, his grandchildren that he would have had, probably.

We realize that. It's kind of tough for me to stand here and look you in the face, based on all that, and tell you that my client deserves mercy. I don't know if my client deserves mercy, that's your decision, solely your decision.

. . . .

You can assume he was premeditating for a month and let the State presume it.

. . . .

But I have a duty to ask for mercy. . . .

. . . .

If Mr. Shelton goes to prison for life without parole, he' ll never get out. It's your decision. He has admitted to you he killed Kenny Lawson. Whether that was justified in his mind, that doesn't make it justified under the law. That's why you don't have the self-defense instruction to consider. That's why the only instruction you have to consider is life with mercy or life without mercy. And I am not going to try to argue that. Hey, you know, you've got to give him mercy, just because you have to. You don't have to do that. You can do anything you want because it's in your hands now.

. . . .

As I said before, I'm not going to be a fool and not request mercy for Mr. Shane Shelton. At the same time, I'm not going to be a fool and ignore the death of Kenny Lawson. Mr. Lawson is completely innocent. I'm not going to ignore that. That doesn't mean we can't justify giving mercy to someone who may learn something. I can say, you know, the biblical teachings "turn the other cheek", all that sort of thing. Even Christ himself said, "Vengeance is mine sayeth the Lord". If there was ever a time for vengeance, this could be it. And you have the sole decision on that.

. . . .

And I'm at odds to explain why this happened myself. And I'm sure you're going to go back there and ask yourself the same thing.

■ As applied to the issue before us in this case, the first prong of *Strickland, supra,* and *Miller, supra,* requires an examina-

---

2. Evidence was introduced at trial which showed that several days prior to the shooting, the vic-

tim, Kenny Lawson, struck the appellant on the head with a bottle.

tion of trial counsel's closing argument to determine whether or not counsel's performance was deficient under an objective standard of reasonableness. *Strickland, supra,* first makes it clear that when a court is attempting to assess whether or not a trial counsel's representation of an accused was deficient, the reviewing court "... must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 698.

*Strickland* explains that the Sixth Amendment counsel requirement in the *U.S. Constitution*

.... relies ... on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfil the role in the adversary process that the Amendment envisions.

Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty.... From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause.... Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

*Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 693–694. The U.S. Supreme Court, in *Strickland,* finds support for determining what is reasonable in the American Bar Association standards, ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), suggesting that these standards should serve as guides when testing whether counsel is ineffective. See also *West Virginia Rules of Professional Conduct,* Rule 1.7, Comments: "Loyalty is an essential element in the lawyer's relationship to his client."

■ We recognize, however, that matters which are regarded as trial strategy do not rise to the level of ineffective assistance "... unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *See* Syllabus Point 21 of *State v.*

*Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). Still, *Strickland* concludes that

... the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation.... The purpose is simply to ensure that criminal defendants receive a fair trial.

*Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. *Strickland* establishes a minimum standard for trial counsel in criminal representation.

The appellant contends, in part, that his trial counsel's closing argument constituted ineffective assistance of counsel because his trial counsel conceded the appellant's guilt, and, further, that trial counsel told the jury that he didn't know if his client deserved mercy. In support of this argument the appellant called Heather Wood, an experienced criminal defense lawyer, to testify at his habeas corpus hearing as an expert in the representation of defendants in criminal cases in state courts.

The appellant cites several appellate cases that he claims support a finding of ineffective assistance of counsel when a defense counsel concedes his client's guilt without the consent of his client or makes admissions which exceed his client's testimony. However, with a single exception, in each of the cases cited by the appellant, the defendant plead *not guilty* and maintained innocence throughout the trial. The excepted case is also factually distinguishable from the instant case.

■ In this case the appellant chose to take the witness stand and testify. In his testimony the appellant admitted to his participation in the shooting and to killing the victim. Furthermore, the appellant also admitted on cross examination by the State that he killed the victim. In light of the appellant's testimony, we do not believe that the mere fact that counsel conceded the appellant's guilt in closing argument is sufficient to constitute a violation of trial counsel's duty of loyalty such that it rises to the level of ineffective assistance of counsel.

■ We do, however, find it troubling that the appellant's trial counsel made repeated and unnecessary references to his client's

guilt, all of which served to remind the jury of the appellant's violent act. We also find it troubling that trial counsel unnecessarily emphasized the severity of the shooting by discussing with the jury the impact of the victim's death on the victim's family. Notwithstanding our concern in this regard, we cannot say that this aspect of trial counsel's argument conduct in this regard was sufficient, *standing alone*, to warrant a finding under *Strickland, supra*, that counsel's performance was deficient under an objective standard of reasonableness.[3]

▪ We next consider the appellant's argument that trial counsel's admission of the appellant's guilt when combined with trial counsel's comments regarding mercy constituted ineffective assistance of counsel.

A review of the record discloses that by the time of the closing argument, the only real issue for the jury was whether or not the appellant would receive mercy.[4] While trial counsel invoked the word "mercy" several times during his closing "argument," we are nevertheless troubled by the fact that counsel expressed his personal opinion that he did not know whether or not the appellant even deserved mercy.[5] Further, trial counsel appeared to be trying to distance himself from the mercy argument with suggestions that it was his *duty*, or *his job* to ask for mercy. Also, trial counsel reminded the jury that the jury had no obligation to award mercy by stating, "Hey, you know, you've got to give him mercy, just because you have to. You don't have to do that." We find it difficult, if not impossible, to consider this type of "argument" in any way favorable to the client that counsel was representing. We also consider especially damning trial counsel's remark

that, "If there was ever a time for vengeance, this could be it." Finally, counsel's remark that he wasn't going to be a fool and not ask for mercy strongly suggests to the jury that counsel only asked for mercy to avoid being considered a fool himself.

We find the foregoing aspects of trial counsel's closing argument to be a betrayal of trial counsel's duty of loyalty to the appellant and, therefore, deficient under an objective standard of reasonableness. It is unlikely that a reasonable lawyer would have acted, under the circumstances, as trial counsel did in this case. This considered, alone, satisfies the first prong of *Strickland, supra*, and *Miller, supra*, and is more particularly convincing when considered in light of defense counsels' over-emphasis of his client's obvious guilt.

▪ The second prong of the *Strickland, supra*, and *Miller, supra*, test is whether or not there is a reasonable probability that, but for defense counsel's unprofessional errors, the result of the proceedings would have been different. As *Strickland, supra*, explains, the second prong requires a showing that counsel's ineffective representation of the accused deprived the defendant of a fair trial and concluded with an unreliable result.

The appellant argues, in part, that trial counsel's representation of the appellant during the trial was ineffective such that the appellant's conviction should be reversed and vacated. From our review of the record we find no merit in this contention. The State produced evidence from twenty-four witnesses and forty-seven exhibits. The appellant himself admitted to the evidence pro-

---

3. Even though we find that trial counsel's concession of guilt under the circumstances of the instant case does not, standing alone, constitute ineffective assistance of counsel, we believe the better practice is for trial counsel to avoid expressions which may be interpreted by the jury as an acknowledgment of or concession of "guilt" and focus the argument on any evidence in the case which may tend to support a mercy argument. We further believe that in the event that an acknowledgment of guilt or concession of guilt is part of a defendant's trial strategy, the better practice is for trial counsel to obtain a written consent from the accused.

4. During closing argument, trial counsel stated: "This is a mercy or no mercy situation."

5. Mr. Jacovette, one of appellant's trial counsel who testified in the habeas corpus hearing, suggested that he "could have been surprised" when his co-counsel stated during closing argument, "I don't know if my client deserves mercy"
Mr. Moses, trial counsel who made the closing argument even acknowledged that "... it [statement that 'I don't know if my client deserves mercy ....'] seems a bit extreme." Mr. Moses went on in his testimony at the habeas corpus hearing to explain that the statement was made so as not to lose credibility with the jury.

duced by the State. Clearly the evidence of guilt of the appellant in committing a homicide is overwhelming. Even counsel admitted in closing that "... [the State] could have proven this case beyond a reasonable doubt without us putting no [sic] any evidence at all." Insofar as the guilty phase of the trial is concerned, we agree with the trial court's finding that "... even if counsel's performance was deficient, then counsel's deficient performance DID NOT adversely affect the outcome of the trial as there was overwhelming evidence of the Petitioner's [appellant's] guilt."

■ While we agree with the trial court that defense counsel's performance did not adversely affect the outcome of the guilty phase of the trial, the same, however, cannot be said with respect to the penalty phase. We agree with the appellant's criminal defense expert that defense counsel made minimal effort to obtain a life with mercy verdict for his client. There was no evidence introduced in support of mercy,[6] defense counsel's closing argument contained no meaningful plea for mercy, there was no request for bifurcation of the trial[7]—resulting in a greater opportunity to develop the "mercy issue." Combining these circumstances with our findings with respect to trial counsel's closing argument, we find that defense counsel was ineffective at the penalty phase of the trial in that the result of the penalty phase of the trial was unreliable as contemplated by *Strickland, supra,* and *Miller, supra.* Therefore, we conclude that the second prong of the *Strickland* and *Miller* test is satisfied with respect to the penalty phase of the trial.

In the present case, where the actions of trial counsel could not have affected the finding of guilt, we believe that it would be a waste of judicial resources to require an entirely new trial. Therefore, rather than require a new trial on the issues of guilt and penalty, we believe the more prudent course would be to require a limited new trial only on the penalty issue—whether or not the appellant should or should not receive mercy. This approach to disposing of a case where prejudice was found to affect only the penalty phase of a first-degree murder trial is not without precedent. For example, this Court in *State v. Doman,* 204 W.Va. 289, 512 S.E.2d 211 (1998) remanded a first-degree murder case for a limited trial on the recommendation of mercy issue in a case that was originally tried as a unitary trial. In *Doman* this Court found that an instructional error did not affect the finding of guilt, but did affect the penalty aspect of the trial. More recently this Court remanded a first-degree murder case for a limited trial on the recommendation of mercy in *State v. Finley,* 219 W.Va. 747, 639 S.E.2d 839 (2006), in which this Court found that the error (requiring the accused to wear prison garb) during the penalty phase did not affect the finding of guilt.

In conclusion, we do not believe that the appellant was prejudiced in the guilty phase of the trial as a result of counsel's representation; therefore, the judgment of the trial court finding that the appellant is guilty of first-degree murder is affirmed. However, for the foregoing reasons, the portion of the judgment relating to the penalty phase recommendation is reversed and remanded. Upon remand, the trial court shall empanel a jury for the trial of the sole issue of whether or not mercy is to be recommended as part of the appellant's sentence.

### III.

Based on the foregoing, we affirm the conviction of the appellant for the crime of first-

---

6. Heather Wood testified at the habeas corpus hearing and stated: "I believe that the jury had absolutely no evidence whatsoever to determine appropriate mitigation, whether or not Mr. Shelton deserves mercy, if that truly was all that this case was going to be about."

7. While the facts in the instant case suggest that bifurcation may be preferable in some first-degree murder cases, we are not prepared to abandon our discretionary bifurcation procedure in such cases. Nevertheless, we are mindful that discretionary bifurcation is not universally ac-

cepted in first-degree murder cases. *See* Justice Neely's dissent in *State ex rel. Rasnake v. Narick,* 159 W.Va. 542, 227 S.E.2d 203 (1976); and Justice Workman's dissent in *Schofield v. West Virginia Department of Corrections,* 185 W.Va. 199, 406 S.E.2d 425 (1991) who states:

The determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation of all relevant circumstances without regard to strategy during trial on the merits.

*Schofield,* 185 W.Va. at 207, 406 S.E.2d at 433.

degree murder; we, however, reverse the sentence of life in prison without the possibility of parole, and remand the case for further proceedings in accordance with this opinion.

Affirmed, in part; Reversed, in part; Remanded.

Justices MAYNARD and BENJAMIN concur, in part, and dissent, in part, and reserve the right to file separate opinions.

BENJAMIN, Justice, concurring, in part, and dissenting, in part:

(Filed Dec. 20, 2007)

I agree with the majority to the extent that this Court affirms the conviction of the appellant for the crime of first-degree murder. However, I dissent from the majority decision to reverse the sentence of life in prison without the possibility of parole and to remand the case for further proceedings related to the sentencing of appellant. In dissenting and writing separately, I wish to emphasize that my disagreement with the majority on the issue of the defense given below is admittedly one of degree. However, I also question the wisdom of this Court in cases such as this making a determination that trial counsel was ineffective, but only in so far as it relates to sentencing and not to guilt. One might wonder how it is, if trial counsel was so ineffective so as to require this Court's action as the majority finds here, that that ineffectiveness was limited only to the appellant's sentencing. It would seem that if ineffectiveness in the defense of appellant was present to the level needed for a partial reversal, that such ineffectiveness no doubt permeated the entire defense to such a degree as to require a complete reversal and remand for a new trial, not simply a resentencing.

The majority opinion recounts not only the viciousness of the crime for which the appellant was found guilty, but also the appellant's ready admission to having shot the victim. In doing so, the majority relies on excerpts of the record—excerpts which I believe have the potential for misleading this Court in its cold appellate review. The court below did not labor under such a restriction. It is in this latter respect, and the effect which the appellant's admission had in the trial, which causes me to disagree with my colleagues and to conclude that the court below ruled correctly.

At first blush, I, too, might question some of trial counsel's tactics. However, a more thorough review of the appellant's testimony and, just as importantly, the practical inability of the trial counsel to mount any legitimate defense are considerations which I believe receive too little consideration from the majority. It is easy to "Monday-morning quarterback" a defense counsel's performance in a trial. That, of course, is not the test for ineffectiveness. Here, I think one must realistically look at what the defense counsel had to work with. And it was precious little. While I'm not certain how I might have defended appellant, I'm not prepared to say that defense counsel below could have done any better than he did with what he had available to him—particularly after his client, the appellant, testified in the manner he did. The trial court below was in the best position to determine effectiveness. I would defer to that court in this instance and not hold defense counsel to an unattainable standard. Indeed, I'm not sure what, if any, prejudice was actually caused to appellant herein even if counsel's performance came up a bit short.

' I am authorized to state that Justice MAYNARD joins in this separate opinion.